[No. B003615. Second Dist., Div. Three. Apr. 3, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JEFFREY J. GREEN, Defendant and Appellant.

---

---

**COUNSEL**

Jolene Larimore, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Carol Wendelin Pollack and Susan Lee Frierson, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**KLEIN, P. J.**—Jeffrey J. Green (Green) appeals from the judgment entered upon his conviction by jury of forcible rape in concert with others, residential robbery, and first degree burglary, with findings as to each count that Green personally used a firearm and that a principal was armed, and upon his admission of a prior felony conviction (Pen. Code, §§ 261, subd. (2), 264.1, 211, 213.5, 459, 12022.3, 12022.5, 12022, subd. (a), 667.5, subd. (b)). The trial court selected the rape in concert as the principal term and imposed consecutive terms for robbery, burglary and the enhancements.

## CONTENTIONS

He contends: "I. There was insufficient evidence to support the finding of 'acting in concert.' II. There is insufficient evidence to support the finding that Green personally used a weapon. III. It was improper to impose time for the use findings on both the robbery and burglary convictions. IV. Where both offenses constitute an indivisible transaction with one objective, Penal Code section 654 prohibits double punishment."

## FACTUAL BACKGROUND

Viewed in the light most favorable to the judgment in accordance with the usual rule of appellate review (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255]), the evidence establishes that at approximately 1 a.m. on December 12, 1982, Green and two other men entered the Long Beach home shared by Debrah L. and Larry H. Larry was out, and Debrah was asleep beside her four-week-old baby. As she awakened and stood, the men rushed up to her. One man placed his hand over her face and threatened to shoot the baby if she screamed. He forced her onto her stomach on the bed, covered her head with a pillow, and placed a gun to her head.[1] The intruders ordered her to put her hands behind her back where they handcuffed them, then someone took three rings from her fingers.

Green then forced Ms. L. to engage in an act of sexual intercourse while holding the pillow over her head and a gun to her neck. At the same time, Green conversed with one of his companions, who told Green to ask Ms. L. where the money, guns and dope were located. When she told Green where the money was, the other man rifled the dresser and jewelry box. Ms. L. heard the third man moving the stereo in the livingroom at the same time. After several minutes, she heard a gunshot from a weapon other than the one at her neck. Green jumped up and fled. As the three men left she heard Larry's car being driven off.

Ms. L. freed one hand and called the police. She discovered that the house had been ransacked and a stereo and other property of Larry's, as well as a $50 bill and twelve $20 bills, were missing. On her bed Ms. L. found a sunflower seed and fresh blood which was not hers, but which was later determined to be of a type consistent with that of Green. At 1:30 a.m. Green entered the emergency room at St. Mary's Hospital in Long Beach with a

---

[1]Ms. L., who apparently did not see the weapon but felt a cold object at her head, described the object as a gun.

gunshot wound to the hip. In his pockets were a stocking mask, a handcuff key, sunflower seeds, two bullets and a $50 bill and twelve $20 bills. Although Green was wounded in the hip, there was no bullet hole in his clothing. Larry's car was parked across the street from the hospital and was returned with the stereo inside.

Green claimed that he was injured in a drive-by shooting as he attended a party.

## DISCUSSION

### 1. *Sufficient evidence to support finding that Green acted in concert.*

■ Green's first contention is meritless. The record establishes that Green and his companions accosted Ms. L. and that more than one of them handcuffed her immediately prior to the sexual assault by Green. This evidence amply supports the jury's determination that Green acted in concert with at least one other person in the commission of the rape. (*People* v. *Lopez* (1981) 116 Cal.App.3d 882, 886-888 [172 Cal.Rptr. 374]; *People* v. *Wheeler* (1977) 71 Cal.App.3d 902, 906-907 [139 Cal.Rptr. 737].)

### 2. *Sufficient evidence to support finding that Green personally used a weapon.*

■ Equally without merit is Green's second contention. The character of the weapon used upon the victim may be shown by circumstantial evidence. (*People* v. *Hayden* (1973) 30 Cal.App.3d 446, 451-452 [106 Cal.Rptr. 348]; *People* v. *Liner* (1959) 168 Cal.App.2d 411, 414 [335 P.2d 964].) Furthermore, " ' "[t]o warrant the rejection of the statements given by a witness who has been believed by the [the trier of fact], there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. . . ." ' " (*People* v. *Mayberry* (1975) 15 Cal.3d 143, 150 [125 Cal.Rptr. 745, 542 P.2d 1337].)

Ms. L.'s testimony that she felt Green place a gun to her head and neck, together with evidence that two bullets were found in Green's pocket, constitutes substantial evidence to support the allegation that he personally used a firearm. (*People* v. *Johnson, supra,* 26 Cal.3d at p. 576; cf. *People* v.

*Stiltner* (1982) 132 Cal.App.3d 216, 230 [182 Cal.Rptr. 790].)

### 3. *Sentencing was proper.*

■ Green's third and fourth contentions are devoid of merit. Penal Code section 654 precludes punishment for both burglary and robbery when the burglary was incident to the objective of robbing the victim.[2] (*People* v. *Hopkins* (1975) 44 Cal.App.3d 669, 677 [119 Cal.Rptr. 61].) However, here the punishment for both burglary and robbery does not violate the proscription of section 654.

There was no indication the intruders were aware that Ms. L. was in the residence when they entered. The record clearly establishes that Green and his companions entered with the intent to commit theft, as evidenced by the companion's inquiry as to the location of certain property and the taking of the stereo and cash. The burglary was thus properly punished separately from the rape and robbery which occurred when, having unexpectedly come upon Ms. L. in the bedroom, Green raped her and one of the men removed the rings from her fingers.

The sentencing court's implied determination that the burglary and robbery did not constitute an indivisible course of conduct is supported by the evidence at trial. (*People* v. *Helton* (1979) 91 Cal.App.3d 987, 992 [154 Cal.Rptr. 482]; *People* v. *Ferguson* (1969) 1 Cal.App.3d 68, 74-75 [81 Cal.Rptr. 418].)

Similarly, as was observed in *People* v. *Blessing* (1979) 94 Cal.App.3d 835, 841 [155 Cal.Rptr. 780], "[a] close reading of [*In re Culbreth* (1976) 17 Cal.3d 330 (130 Cal.Rptr. 719, 551 P.2d 23)] compels the conclusion that the propriety of multiple use enhancement should be tested in a manner akin to that traditionally applied to Penal Code section 654 (at pp. 333, 335; see also *People* v. *Chi Ko Wong* (1976) 18 Cal.3d 698, 726, fn. 20 [135 Cal.Rptr. 392, 557 P.2d 976])."

Because the robbery and burglary involved separate objectives and did not comprise one indivisible transaction, the enhancements pursuant to Penal Code section 12022.5 were properly imposed as to both counts. (*In re Culbreth, supra,* 17 Cal.3d at p. 333; cf. *People* v. *Wischemann* (1979) 94 Cal.App.3d 162, 174 [156 Cal.Rptr. 386]; Pen. Code, § 1170.1, subd. (a).)

---

[2]Penal Code section 654 provides, in pertinent part, as follows: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one . . . ."

The judgment is affirmed.

Lui, J., and Danielson, J., concurred.