[No. G001745. Fourth Dist., Div. Three. Mar. 31, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
ALECK EUGENE RABY, Defendant and Appellant.

578

**COUNSEL**

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Frederick R. Millar, Jr., Michael D. Wellington and Janelle B. Davis, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CROSBY, J.**—Aleck Raby was convicted of nine counts of robbery with the personal use of a gun (Pen. Code, §§ 211, 12022.5). He contends the court erred in (1) finding the use allegations applicable to an inoperable handgun, (2) employing previous prison terms to justify imposition of consecutive sentences after the prosecution failed to prove the priors at trial, and (3) imposing consecutive sentences for more than two firearm use enhancements. The Attorney General responds by seeking to overturn the court's acquittal on one of the alleged prior convictions.

I

Raby, a professional scofflaw with a hankering for Miller's Outpost, a clothing store chain, entered one outlet on the morning of November 21, 1982. He brought items to the check-out area and pulled a gun. After forcing the clerk to empty the cash register, he rounded up the other employees and ushered them to a back room. He separated the manager from the group and escorted her to the front of the store, where she was required to open the other registers and the store safe. Returning to the back room, and still waving the gun, Raby relieved the employees of their own cash and took car keys from one. He made his escape in the employee's vehicle.

Raby struck in a similar manner at another Miller's Outpost on the evening of December 4, 1982. He first robbed a cashier at gunpoint. Customers were then herded together and robbed of their own money. Employees were escorted to the back of the store and also robbed. He then forced the store manager to assist him in emptying the other registers and the safe.

Raby was arrested with the loot and the gun as he attempted his getaway. The gun was loaded and capable of firing, although the safety was engaged and not functioning properly. Only by use of a pen was a detective able to release the safety mechanism.

In a trial to the court, the first incident resulted in four robbery convictions, plus a similar number of firearm use findings. The second yielded five more robbery convictions and a firearm use finding on each.

## II

Raby contends the court erred in concluding the gun was operable despite the malfunctioning safety and urges we reverse on all the use allegations. But nothing in the language of Penal Code section 12022.5 requires a weapon to be operable in order to impose an enhancement for its use, and neither does case law. (*People* v. *Nelums* (1982) 31 Cal.3d 355 [182 Cal.Rptr. 515, 644 P.2d 201]; *People* v. *Jackson* (1979) 92 Cal.App.3d 899 [155 Cal.Rptr. 305].)

Moreover, even if operability were required, the malfunctioning safety did not render the gun inoperable, only more difficult to operate. An officer was able to disengage the safety with another object. A bandit familiar with his own weapon could have done so as well.

## III

Raby's remaining contentions are devoted to alleged sentencing errors. The first is easily resolved. Raby was sentenced to the aggravated term of five years for the first count, with a two-year enhancement for use of a gun. He received consecutive one-year sentences (one-third the midterm of three years) on the other eight robbery counts and four consecutive eight-month enhancements for use of a gun. He claims the court improperly imposed consecutive sentences because it relied on previous prison terms found to be untrue. We disagree.

The information alleged three prior felony convictions: a 1960 forgery and 1963 burglary in Texas and a 1975 Nevada robbery. It was further alleged Raby had served a separate prison sentence for each of the Texas

convictions and had not remained free of custody for five years after release within the meaning of Penal Code section 667.5, subdivision (b). But the court found Raby had remained free of custody for five years after both Texas convictions and was consequently not subject to an enhancement for either. When the prosecution bungled its presentation of the evidence, the court expressly acquitted him of the Nevada prior, finding the evidence insufficient to prove it beyond a reasonable doubt.

Nevertheless, complains Raby, at sentencing the court noted he had served prior prison terms and was on parole when these offenses were committed. This was not improper, however: In sentencing a defendant, any circumstance in aggravation may be considered, including prior prison terms, "whether or not charged or chargeable as an enhancement under section 667.5." (Cal. Rules of Court, rule 421(b)(3); see also rules 425 and 421(b)(2), (4), and (5).) Moreover, trial of prior convictions is based on the reasonable doubt standard, which is not the test utilized in evaluating factual input at sentencing. Also, status as a parolee is a factor independent from the prior convictions. (*People* v. *Jerome* (1984) 160 Cal.App.3d 1087, 1098-99 [207 Cal.Rptr. 199].) The reasons stated for the imposition of consecutive sentences were sound.

## IV

 The remaining sentencing issue is far more troublesome. Of the four gun use violations found to have occurred at the first Miller's Outpost, the trial court imposed consecutive sentences on two. The court meted out consecutive sentences on three of the five found to be true in the second. Citing *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23], Raby challenges the imposition of five consecutive terms for the use enhancements. He argues only one enhancement per store was proper because, in the language of *Culbreth,* where the crimes are "all part of a single melee [and] [t]here was but one occasion, one intent, one objective, one indivisible transaction. . . . section 12022.5 may be applied only once." (*Id.,* at p. 335.)

The Attorney General replies, "Normally, only one Penal Code section 12022.5 enhancement may be imposed where all the charged offenses are incident to one objective and effectively comprise an individual transaction, even if there is more than one victim." Also relying on *Culbreth,* however, he notes the determination as to the number of use enhancements for which a defendant may be sentenced is a factual one based on the defendant's "apparent intent and objective." (*Ibid.*)[1] Accordingly, it is suggested the

---

[1]Curiously, so far as we are aware, no one has ever challenged the authority of the court, as opposed to the jury, to make this factual determination in *Culbreth* or Penal Code section 654 situations. This trial was to the court.

imposition of sentence on more than two use enhancements here was justified because Raby "entertained separate and identifiable intentions and objectives in the commission of the offenses against two of the robbery victims in the November robberies and three of the robbery victims in the December robberies."

We do not agree with the Attorney General's contention, but admit considerable unease with the current state of the law. After intensive study, we are not sure a coherent rule on the subject can be constructed on the foundation of *Culbreth* and its progeny. A test based in part on intent and objective is seriously flawed for several reasons: It favors those who harbor the graver criminal intent over those whose crimes are, in part, largely reactions to circumstances; worse, the test is so subjective that it approaches arbitrariness in its application.

And attempting to determine what is an indivisible transaction or occasion, the other leg of the *Culbreth* standard, is no easier when one examines fact situations as close as those we consider today. The outcome becomes a function of how broadly or narrowly one chooses to view the events. For example, for purposes of distinguishing completed robberies and attempts, a robbery is complete when the perpetrator has obtained property, however briefly, from the victim. On the other hand, to determine the applicability of the felony murder rule, a robbery is not legally completed until the bandit has reached a place of temporary safety with unchallenged possession of the loot. Are these crimes to be viewed within the narrow scope of the law of attempts or the broader one of the felony murder rule, or some third theory? The first would allow consecutive sentencing for firearm enhancements in virtually all cases, the second in almost none. There must be a third test. Our difficulty is simply that it has yet to be articulated.

We begin our analysis with the nine robberies of which Raby stands convicted. They were violent felonies (Pen. Code, § 667.5, subd. (c)(8)). As multiple victims were involved, there was no bar to a separate punishment for each of them (Pen. Code, § 654; *People* v. *Prater* (1977) 71 Cal.App.3d 695 [139 Cal.Rptr. 566]); and consecutive sentences were also proper. (Rule 425, Cal. Rules of Court.) Per *Culbreth*, however, the enhancements must be treated differently.

The sentencing procedure for enhancements is now generally controlled by Penal Code section 1170.1, subdivision (a). It provides, "when any person is convicted of two or more felonies . . . and a consecutive term of imprisonment is imposed . . . the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term and any additional term imposed pursuant to Section 667.5, 667.6, or

12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any enhancements imposed pursuant to Section . . . 12022.5 . . . . The subordinate term for each consecutive offense which is a 'violent felony' as defined in subdivision (c) of Section 667.5, including those offenses described in paragraph (8) of subdivision (c) of Section 667.5, shall consist of one-third of the middle term of imprisonment prescribed for each other such felony conviction for which a consecutive term . . . is imposed, and shall include one-third of any enhancements imposed pursuant to Section . . . 12022.5 . . . ." Enhancements may be stricken only if the court articulates on the record the mitigating circumstances which justify such action. (Pen. Code, § 1170.1, subd. (h).)

Nevertheless, despite the apparent mandatory language of the statute, sentencing on the enhancements in this case is not entirely dictated by section 1170.1, subdivision (a); *In re Culbreth, supra,* 17 Cal.3d 330 has more to say on the matter. Several years before Penal Code section 1170.1 was amended as part of California's return to determinate sentencing, a bare majority of the Supreme Court decided only one sentence enhancement under Penal Code section 12022.5 could be imposed when multiple violent felonies were "incident to one objective and effectively comprise[d] an indivisible transaction." (*Id.,* at p. 333.)

In *Culbreth* the defendant shot his wife and two members of her family in "a single frenetic act of violence" and was convicted of two second degree murders and one manslaughter, each with use of a firearm. (*Id.,* at p. 334.) The victims were not killed with the same bullet. They were shot separately, although closely in time. But the court, while it allowed each of the findings to stand, modified the judgment to provide for the imposition of only one term for use of a firearm under Penal Code section 12022.5. The debatable "single act" conclusion of the *Culbreth* majority is the genesis of the recurrent sentencing problem now before us.

Before we examine the rule of *Culbreth* further, however, we indulge in a brief digression to consider from whence it came, as *Culbreth* itself provides virtually no original analysis. The majority quotes from three Court of Appeal opinions (*People* v. *Bush* (1975) 50 Cal.App.3d 168 [123 Cal.Rptr. 576], disapproved on other grounds in *People* v. *Walker* (1976) 18 Cal.3d 232, 240 [133 Cal.Rptr. 520, 555 P.2d 306]; *People* v. *Lowe* (1975) 45 Cal.App.3d 792 [119 Cal.Rptr. 699]; and *People* v. *Johnson* (1974) 38 Cal.App.3d 1 [112 Cal.Rptr. 834], disapproved on another point in *People* v. *McDonald* (1984) 37 Cal.3d 351, 366-371 [208 Cal.Rptr. 236, 690 P.2d 709]). Reliance on them seems remarkable because in each the Court of Appeal stated, "Where, as here, a single judgment imposes sen-

tences for several crimes committed upon a single occasion, only one *finding* under section 12022.5 is permissible." *(People v. Johnson, supra,* 38 Cal.App.3d at p. 12, italics added; *People v. Lowe, supra,* 45 Cal.App.3d at p. 796; *People v. Bush, supra,* 50 Cal.App.3d at p. 178, fn. 1.) Consistent with this statement, the appellate courts in *Johnson* and *Bush* modified the judgments by striking the use findings as to each count and adding a single finding of weapons use. *(People v. Johnson, supra,* at p. 13; *People v. Bush, supra,* at pp. 178-179.) As the *Bush* court observed, "It is the law that with respect to one 'occasion' *only one finding* under section 12022.5 is permissible, regardless of the number of victims." *(Id.,* 50 Cal.App.3d at p. 178, italics added.) *Culbreth,* of course, did not so conclude. Where applicable, the *Culbreth* rule permits multiple findings and only prohibits imposition of more than one unstayed sentence.

The three justices who dissented in *Culbreth* characterized the majority opinion as a misapplication of Penal Code section 654. In their view, "Nothing in [Penal Code section 12022.5] indicates that it is applicable to one of [defendant's] murders but not the other one. [¶] . . . [Moreover, because] "a defendant committing two murders . . . on a 'single occasion' may be convicted and punished for both of them[,] [s]o also may the punishment for each of the murders be enhanced under section 12022.5." *(In re Culbreth, supra,* 17 Cal.3d at p. 336 (dis. opn. of Clark, J.).)

Although the Supreme Court has applied *Culbreth* on subsequent occasions, it has never taken the opportunity to reexamine its origins or clarify its analytical foundation. (See *People v. Chavez* (1980) 26 Cal.3d 334 [161 Cal.Rptr. 762, 605 P.2d 401] [drive-by gang shooting followed by police chase and shoot-out] and *People v. Miller* (1977) 18 Cal.3d 873 [135 Cal.Rptr. 654, 558 P.2d 552] [jewelry store robbery where security guard was shot].) There is no question, however, that *Culbreth* survived the transition to determinate sentencing. *(People v. Cardenas* (1982) 31 Cal.3d 897, 913-914 [184 Cal.Rptr. 165, 647 P.2d 569]; *People v. Edwards* (1981) 117 Cal.App.3d 436, 447-448 [172 Cal.Rptr. 652].)[2]

Today the *Culbreth* rule remains at least as ambiguous as its heritage. Although a court may make as many findings of firearm use as there are victims, only one sentence enhancement may be imposed for each "occasion" of gun use. But what is an "occasion"? That question has threatened judicial sanity and spawned distinct lines of authority.

---

[2]It does appear that the *Culbreth* rule has been abrogated in the case of certain sex offenses. Under those circumstances, Penal Code section 1170.1, subdivision (i) expressly authorizes the imposition of an unlimited number of sentence enhancements for use of a firearm. The Supreme Court does not concede the point, however, and merely describes the statute as "[t]he one possible exception" to the single occasion rule. *(People v. Cardenas, supra,* 31 Cal.3d 897, 913, fn. 9.)

Not surprisingly, a single gunshot which injures two victims constitutes but one occasion of gun use. (*People* v. *Prater, supra,* 71 Cal.App.3d 695, 703-704.) Similarly, where a defendant has been convicted of more than one violent felony involving the same victim, courts usually have little difficulty in finding a single occasion of gun use and have imposed but one sentence enhancement. (E.g., *People* v. *Prysock* (1982) 127 Cal.App.3d 972 [180 Cal.Rptr. 15]; *People* v. *Ramirez* (1979) 93 Cal.App.3d 714 [156 Cal.Rptr. 94].) This, too, is a reasonable rule, although it is not always followed. In *People* v. *Green* (1985) 166 Cal.App.3d 514 [212 Cal.Rptr. 451], for example, three consecutive gun use enhancements were permitted for the burglary, robbery, and rape of the same victim in the course of a single foray into her home.

Where, as here, the defendant has committed nonsexual violent felonies against multiple victims, the difficulties multiply apace; and the cases diverge accordingly. For example, in *People* v. *Levitt* (1984) 156 Cal.App.3d 500 [203 Cal.Rptr. 276], the defendant confronted his estranged wife in her office and then shot his business partner and another employee. The trial court found two occasions of gun use because the motivation for shooting the two victims was different: The business partner was attacked for interfering with the defendant's marriage; the employee was shot to eliminate him as a witness. But the Court of Appeal disagreed with the result, observing, as we do, that the *Culbreth* "formulations are vague as to what constitutes a 'single occasion.'" (*Id.,* at p. 511.)

 Where a firearm is used "in the course of a continuous transaction in which the defendant has no 'time out' from his series of crimes to pause and reflect on the penal consequences of each successive use," only one sentence enhancement may be imposed. (*Ibid.*) Similarly, if "multiple uses occurring during a continuous transaction are incident to a single objective[, only one sentence enhancement is proper] unless the evidence supports a reasonable inference that the motivations underlying the uses are unrelated to each other." (*Ibid.*) *Levitt* ruled, "Thus if a defendant uses a firearm to rob several salesclerks in one establishment, he can be punished for only one gun use, because the motivation for each use is related to his overall objective of theft." (*Ibid.*)

Numerous similar cases have reached the same result and permitted only one sentence enhancement. (See *People* v. *Amerson* (1984) 151 Cal.App.3d 165, 170 [198 Cal.Rptr. 678] [three victims stabbed in one house]; *People* v. *Johns* (1983) 145 Cal.App.3d 281, 294 [193 Cal.Rptr. 182] [robbery and murder of two victims in car in fast-food line]; *People* v. *Masters* (1982) 134 Cal.App.3d 509, 529 [185 Cal.Rptr. 134] [robberies in retail store where cash taken from separate cash registers]; *People* v. *Polk* (1982) 131

Cal.App.3d 764, 779 [182 Cal.Rptr. 847] [several robberies and one murder of customers in restaurant]; *People* v. *Edwards, supra,* 117 Cal.App.3d 436, 447-449 [robberies in retail stores]; *People* v. *Freeman* (1979) 95 Cal.App.3d 917, 924-925 [157 Cal.Rptr. 454] [robberies of three victims in different locations in one motel]; and *People* v. *Wilson* (1976) 62 Cal.App.3d 370, 375-376 [132 Cal.Rptr. 813] [attack on several victims in same location].)[3]

What then are the circumstances justifying the finding of multiple occasions of gun use? Frankly, we find little to distinguish the facts of the cases in this line of authority from those where but a single occasion of gun use was found. In *People* v. *Wischemann* (1979) 94 Cal.App.3d 162 [156 Cal.Rptr. 386], for example, the defendant robbed a customer who entered a convenience store while the holdup was in progress. Reasoning the robbery of the customer "was not related to defendant's goal of opening the ,safe but was simply an additional act perpetrated against another victim who appeared on the scene by chance," the Court of Appeal affirmed imposition of two gun use sentence enhancements. (*Id.,* at p. 174.)

In *People* v. *Blessing* (1979) 94 Cal.App.3d 835 [155 Cal.Rptr. 780], to avoid apprehension while driving a stolen car, the defendant shot an officer who approached to give him a traffic citation. Approximately fifteen minutes later, and again to avoid capture, he commandeered another vehicle at gunpoint. The court had no trouble determining the crimes involved divisible occasions of gun use.

*People* v. *White* (1981) 117 Cal.App.3d 270 [172 Cal.Rptr. 620] followed. Dan White shot and killed the Mayor of San Francisco and a member of the board of supervisors. Conceding White had the same motive in both deaths, revenge, the Court of Appeal nevertheless determined the slayings were not part of a single objective because White had to reload between shootings and walk from one end of the city hall to the other to locate his second target.

*People* v. *Clay* (1984) 153 Cal.App.3d 433 [200 Cal.Rptr. 269] arrived at a similar conclusion with still less separation of time and space between the offenses. In a sweep through a nursing home, the defendant robbed several residents in different rooms. The Court of Appeal affirmed the imposition of six consecutive terms for use of a firearm because "each of [those] victims occupied a separate room. The time, admittedly short, which

[3]One Court of Appeal has even held after *Culbreth* that multiple sentence enhancements may be imposed so long as the sentences are ordered to run concurrently. (*People* v. *Rosalez* (1979) 89 Cal.App.3d 789, 794 [153 Cal.Rptr. 65] [defendant robbed salesclerk at cash register and store manager of personal cash].)

it took to gain access to each successive room, not only negates the theory of a 'single frenetic act of violence which, unfortunately, resulted in multiple victims' (*Culbreth, supra,* at p. 334), but, more importantly also provided the opportunity for the special statutory objective of deterrence against firearm use to have its effect. Each time Clay entered another resident's room with a gun in his hand he created a new risk to a new victim. And each time he left a room, before entering the next, he theoretically renounced an opportunity to allow [the potential for punishment under] Penal Code section 12022.5 to persuade him to abandon a separate occasion of firearm use." (*Id.,* at p. 464.)

*People* v. *Jordan* (1984) 155 Cal.App.3d 769 [203 Cal.Rptr. 172] involved a rather out-of-the-ordinary department store robbery. There, Jordan and his confederates were unsuccessful in their first attempt to force an employee to open the store safe. Three days later they appeared at the night manager's home to "escort" him to the store to consummate the crime. Because he claimed not to have the combination to the safe, the robbers held his family hostage that night and proceeded to the home of another manager the following morning. That manager was kidnapped at gunpoint and, along with the night manager, taken to the store. Three other employees already on the premises were taken captive, and the safe was breached. The robbers escaped with the loot but were apprehended several days later.

Based on this convoluted series of events, the Court of Appeal determined three separate enhancements were proper: one for the aborted robbery days earlier, one for the events of the evening before and day of the completed robbery itself, and one for the kidnapping[4] of the store manager with the combination. The court reasoned: "[The night manager, his wife,] and the three cleaning persons on the premises at [the store] were multiple victims of what was in essence a single 'occasion' of gun use. All these persons were forseeable [*sic*] victims of the gun use in the contemplation of the defendants pursuant to the single objective of robbing the . . . store. The kidnaping of [the other manager] and the false imprisonment of his wife, however, represent a divisible 'occasion' of gun use. [His] kidnaping . . . was not within the objectives of the original enterprise. Defendants, after ample time for deliberate consideration, formed the separate intent to kidnap [him]." (*Id.,* 155 Cal.App.3d at p. 786.)

---

[4]The careful reader will observe that we have used a different spelling of "kidnapped" and "kidnapping" than found in earlier California reports, as illustrated in the case quoted on this page. The change was recently announced by the Reporter of Decisions, perhaps to finally conform to the Legislature's chosen form in the Penal Code. (See, e.g., Pen. Code, § 207, subd. (a).) The *Los Angeles Times* and *Time* magazine still adhere to the former "official" spelling. With all due respect to the Legislature and the Reporter of Decisions, we prefer the sports section to the Penal Code and "kidnaping" to "kidnapping." We respectfully dissent.

The most recent and harshest opinion in this category is *People* v. *Green, supra,* 166 Cal.App.3d 514. During the course of a residential burglary, Green and two confederates unexpectedly discovered a female occupant inside. She was raped and robbed of her jewelry. Green received consecutive sentences for rape, robbery, and burglary, each enhanced with a consecutive sentence for the use of a gun. As to the substantive counts, the consecutive sentence on the sex offense was statutorily authorized; and, as the intent to rob was determined not to arise until after the burglary was committed, the court found imposition of consecutive sentences on those counts was proper. But the court also permitted consecutive sentences on all three gun use enhancements although the multiple crimes were committed against only one victim. The consecutive sentence as to the enhancement relating to the sex offense was statutorily authorized (Pen. Code, § 1170.1, subd. (i)), but what of the other two?

Finally, *People* v. *Williams* (1982) 129 Cal.App.3d 994 [181 Cal.Rptr. 462] occupies a special niche because the defendant's consecutive sentences on gun enhancements were based on a plea bargain. The facts of his crimes are virtually indistinguishable from Raby's. Armed with a gun, Williams forced a clothing store clerk to empty the cash register. The doors were then locked, and the clerk took Williams to another employee at the back of the store. The store safe and the second employee were robbed. Williams encountered and wounded a police officer as he was leaving the store.

He was charged with eight offenses, including two counts of robbery, each accompanied by a firearm use allegation. After his motion to suppress was denied, he agreed to plead guilty to the two robbery counts involving the employees and admit the great bodily injury enhancement, plus two firearm uses, in exchange for a sentence which included two consecutive terms for use of a gun.

In approving separate sentences for each use, the Court of Appeal observed, "Williams' statements on [the change of plea] form acknowledge[d] his understanding that the underlying facts of the offenses to which he pleaded guilty could reasonably be interpreted as supporting a factual finding that he had separate and identifiable intents and objectives in the commission of each of the robberies"; and the sentencing court expressly made that finding. (*Id.,* at p. 997.) Thus, concluded the Court of Appeal, separate sentence enhancements were proper.

Our efforts to identify and analyze the distinctions between these two lines of authority have proved exceedingly frustrating. In a broad sense, one might concede that the cases where multiple sentence enhancements have

been imposed possess elements not present in Raby's crime spree. What could be characterized as the original criminal plan in several of them was somehow altered in response to unanticipated events. For example, in *People* v. *Wischemann, supra,* 94 Cal.App.3d 162, the appearance of a customer during the convenience store robbery gave the defendant an unexpected additional target; in *People* v. *Green, supra,* 166 Cal.App.3d 514, an unexpectedly occupied house yielded an unanticipated victim who was robbed and raped. In others, "the defendant [had] an opportunity to pause and reflect on the enhanced penal consequences of using his gun to achieve a newly-arising objective . . . ." (*People* v. *Levitt, supra,* 156 Cal.App.3d at pp. 511-512; see *People* v. *Clay, supra,* 153 Cal.App.3d 433, and *People* v. *White, supra,* 117 Cal.App.3d 270.) But do these thin distinctions justify the disparate sentencing treatment? And can a cogent rule be gleaned from the cases?

The following example demonstrates the difficulty, if not futility, of the exercise: An armed defendant convicted of robbing seven solitary attendants at seven gas stations on the same street in the same evening may receive seven consecutive sentences and seven consecutive gun use enhancements. So might the armed crook who snares six successive drop-in customers while he is attempting to breach the safe at a gas station manned by a single employee. But the armed outlaw who robs a group of seven individuals at one gas station may receive seven consecutive robbery sentences and only one firearm use enhancement. On what basis is a more lenient sentence for the third felon justifiable? Are the "extra" six victims any less terrorized because they were, from the outset, part of a group? Are one felon's criminal actions less blameworthy than those of the others?

There appears to be no easy or universal understanding of the *Culbreth* rule by those who must apply it, least of all us, perhaps. Clearly, neither multiple victims nor multiple motivations, without more, justify the finding of multiple occasions of gun use. Renouncing the chance to abandon a criminal scheme before encountering additional victims (the nursing home scenario) or seizing an opportunity to commit additional offenses on unexpected victims (the customer who enters a store or the resident who returns home while crimes are in progress), however, does appear to influence the determination as to the number of occasions of gun use. But this is just another way of saying that the more grandiose the perpetrator's original plan, in terms of the number of victims, the less severe will be the punishment—a grotesque rule of law by any standard.

Where does Raby belong on this mercurial scale? The prosecutor urged the court to sentence him to two separate terms for gun use in the first crime

and three in the second. His theory was rational enough, although grounded on a novel idea—the *source* of the booty in each episode, i.e., store receipts and employees' personal belongings in the first and those plus customers' valuables in the second. This notion has yet to provide a basis for a finding of multiple occasions of gun use according to our research, however. More to the point the prosecutor did not urge, and the court did not find, that these discrete groups of victims were robbed as the result of different objectives or that Raby had a "'time out' from his series of crimes to pause and reflect on the penal consequences of each successive use." (*People* v. *Levitt, supra,* 156 Cal.App.3d at p. 511.) Rather, at sentencing the court repeated the prosecutor's theme: "I am persuaded . . . that I can break down the use for sentencing purposes into two separate times and on the two separate times, two separate groups on the [first] robbery and [three] separate groups on the [second] robbery."

We cannot agree. The court articulated no finding of separate occasions of gun use, nor would the record support that conclusion in light of most of the cases we have reviewed. (Cf. *People* v. *Williams, supra,* 129 Cal.App.3d 994.) Raby obviously intended to rob everyone present each time; there were no unexpected victims; and there was no significant hiatus between the offenses committed in each store. Thus, the *Culbreth* rule, as we understand it, rewards him for the scope of his original criminal intent and permits the imposition of only two consecutive sentences for firearm use enhancements—one for each store. We believe the rule is ripe for reassessment but, of course, yield to its mandate. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].)

V

■ Finally, the prosecution urges a remand to allow the trial court to reconsider the Nevada conviction and possible imposition of a five-year enhancement. The request in effect seeks retrial of the alleged prior and reconsideration of the court's conclusion that it was not proved beyond a reasonable doubt. We are somewhat surprised that a firm with a substantial speciality in criminal law could hatch such a spurious notion. The court expressly *acquitted* Raby on that allegation. He has been once in jeopardy; another attempt is not permissible. (U.S. Const., 7th Amend.; *People* v. *James* (1985) 170 Cal.App.3d 164 [216 Cal.Rptr. 24]; *Ellsworth* v. *Superior Court* (1985) 170 Cal.App.3d 967 [216 Cal.Rptr. 589].)

The abstract of judgment is ordered modified to stay the sentences imposed on all but two of the gun use enhancements pending completion of

the sentence at which time the stay shall become permanent. As modified, the judgment is affirmed.

Sonenshine, Acting P. J., and Wallin, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 10, 1986. Panelli, J., was of the opinion that the petition should be granted.