[No. B088065. Second Dist., Div. One. July 18, 1996.]

THE PEOPLE, Plaintiff and Respondent, v.
RAY ARTHUR DAILEY et al., Defendants and Appellants.

COUNSEL

Robert E. Boyce and Kim Malcheski, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Marc E. Turchin and Sally P. Brajevich, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

MASTERSON, J.—Sometimes even the most egregious mistake made at trial can be rectified on appeal. Sometimes it cannot. The mistake here was the failure to provide spaces on the verdict forms to specify the degree of the murders of which a jury found appellants guilty. Although the consequences of this mistake may reduce by decades the sentences imposed for appellants' brutal crimes, we are powerless to correct it.

### BACKGROUND

Appellants Ray Arthur Dailey and Albert Alexander, along with other accomplices, engaged in a crime spree over a 24-hour period in December 1991 in which they committed 7 armed robberies of commercial establishments. No injuries were inflicted until the final incident, when two employees of a 7-Eleven store in Santa Monica were shot, one fatally. The police were summoned, and while they were engaged in the capture of the perpetrators, an officer mortally wounded one of appellants' accomplices.

Appellants were jointly charged with two murders (the special circumstance murder of the 7-Eleven employee and the vicarious liability murder of their accomplice), two attempted murders and felonious assaults (of the other 7-Eleven employee and of a police officer who participated in their capture), and multiple armed robberies. They were ultimately acquitted of the vicarious liability murder of their accomplice and of the attempted murder of the officer who participated in their capture. Other than with respect to these acquittals, the evidence was overwhelming.

As to the murder of the 7-Eleven employee, the only theory on which the prosecution proceeded was that it occurred in the commission of a robbery. The special circumstance, which was alleged pursuant to Penal Code section 190.2, subdivision (a)(17) (murder in the commission of a felony), was based on the same theory. In accordance with this theory, the jury was instructed, inter alia, that an unlawful killing in the commission of a robbery constitutes first degree murder (CALJIC No. 8.10), and that an aider and abettor to a killing in the commission of a robbery is also guilty of first degree murder (CALJIC No. 8.27). The jury was further instructed that if a defendant is found guilty of first degree murder the jury must determine the truth of the alleged special circumstance, and that to be liable for the special circumstance the defendant must have been an actual killer, or if not the actual killer the defendant must have aided and abetted with the intent to kill or must have acted with reckless indifference to human life as a major participant in the robbery (CALJIC No. 8.80.1).

The verdicts returned as to each defendant on the charged murder of the 7-Eleven employee provided as follows: "We, the Jury in the above-entitled action, find the Defendant [name] guilty of the crime of MURDER . . . in violation of PENAL CODE SECTION 187(a), a Felony, as charged in Count 1 of the Information. [¶] We further find that in the murder of [the victim], the said defendant, [name], was the actual killer, OR an aider and abettor who had the intent to kill, OR was an aider and abettor who acted with a reckless indifference to human life and was a major participant in the robbery to be TRUE." The verdicts also stated that appellants had personally used a firearm and had been armed with a firearm in the commission of the murder. The record is silent as to who prepared the verdict forms, nor does it disclose whether the forms were reviewed by counsel before being submitted to the jury.

At sentencing, appellants moved to have their murder convictions be deemed to be of the second degree based on the jury's failure to fix the degree of the murders in their verdicts. The motions were denied, and the

trial court found that both appellants had been convicted of first degree murder with a robbery-murder special circumstance. Appellant Dailey was sentenced to a term of life in prison without the possibility of parole. Appellant Alexander was sentenced to a term of 25 years to life, the court exercising its discretion under Penal Code section 190.5, subdivision (b), to reduce Alexander's term because he was under 18 years of age at the time of the murder and was less culpable than Dailey. Both appellants were also sentenced on their remaining convictions.[1]

## DISCUSSION

### 1. *The Verdicts*

Appellants contend that the trial court erred in failing to deem their convictions to be of second degree murder. Dailey further contends that the verdict form was also deficient in failing to contain a finding on the special circumstance allegation. We agree with appellants' joint contention and order that their murder convictions be deemed to be of the second degree. Based on this disposition and because a special circumstance is not relevant without a finding of first degree murder (see Pen. Code, § 190.2, subd. (a); *People* v. *Williams* (1984) 157 Cal.App.3d 145, 155 [203 Cal.Rptr. 562]), we need not discuss Dailey's contention that the special circumstance finding against him was independently inadequate.

Penal Code section 1157 provides: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree." In no uncertain terms, our courts have held that this statute means exactly what it says. Indeed, "[c]ourts have consistently applied sections 1157 and 1192 [section 1157's counterpart for a guilty plea] strictly and literally in favor of defendants, so much so that 'on this point, form triumphs over substance, and the law is traduced.' [Citations.]" (*People* v. *Williams, supra,* 157 Cal.App.3d at p. 153.)

The cornerstone of our analysis is the case of *People* v. *McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011]. In *McDonald,* the defendant was charged with murder and the special circumstance that the murder occurred in the commission of a robbery. The jury

---

[1]An issue arising from that sentencing is discussed below.

was instructed in a manner similar to the instructions given here. (*Id.* at p. 379.) The defendant was found guilty of murder on a verdict form that did not specify degree, and the special circumstance was found to be true. The *McDonald* court rejected the Attorney General's argument that the degree of murder could be inferred from the true finding on the special circumstance and the fact that the only murder theory presented to the jury was first degree felony murder. In so doing, the court noted that "[t]his precise contention has been rejected in a long line of decisions which require that the degree be explicitly specified by the verdict. [Citations.]" (*Id.* at p. 380.)

In reviewing legal precedents on this issue, *McDonald* referred to *People v. Beamon* (1973) 8 Cal.3d 625 [105 Cal.Rptr. 681, 504 P.2d 905], a case in which the verdict form did not specify the degree of the defendant's robbery, although the defendant was found to have been armed while committing the crime. The robbery was deemed to be of the second degree because, stated the court, " 'We cannot assume, contrary to the clear legislative direction, that because a factual finding was made which would have warranted a determination of first degree robbery, the jury unmistakably intended [citation] to make that determination when it refrained from *expressly fixing the degree.*' ([8 Cal.3d at p. 629, fn. 2]; italics added.)" (*People v. McDonald, supra,* 37 Cal.3d at pp. 380-381.)

Following discussion of other precedents, the *McDonald* court observed that "[t]hese decisions illustrate the rule that the statute applies to reduce the degree even in situations in which the jury's intent to convict of the greater degree is demonstrated by its other actions. . . . [T]he key is not whether the 'true intent' of the jury can be gleaned from circumstances outside the verdict form itself; instead, application of the statute turns only on whether the jury specified the degree in the verdict form." (37 Cal.3d at p. 382.) Accordingly, the defendant in *McDonald* was deemed to have been convicted of second degree murder as a matter of law. (*Id.* at p. 383.)

In the face of this clear rule of law, respondent uses three different approaches in an attempt to "save" the trial court's ruling that appellants had been convicted of first degree murder. All of them fail.

First, respondent suggests that appellant was convicted of the crime of felony murder and that this crime is not divided into degrees. However, the one case respondent cites in "general" support of this proposition—*People v. Miller* (1992) 6 Cal.App.4th 873 [8 Cal.Rptr.2d 193]—merely holds that because the crime of *conspiracy* is not divided into degrees, Penal Code section 1157 is inapplicable to a verdict on that crime. Respondent offers no

other authority for the novel proposition that felony murder is a separate crime with its own identity. Moreover, even if it were, "felony murder" was not the crime found by the jury below inasmuch as the information did not charge appellants under this theory,[2] and the finding associated with the special circumstance did not state that the murder occurred in the commission of the robbery.

In *McDonald*, the defendant was acquitted of the robbery that formed the basis of the special circumstance allegation. (*People* v. *McDonald, supra,* 37 Cal.3d at p. 379.)[3] From this, respondent next argues that appellants' convictions of the underlying robberies in this case "eliminat[e] any ambiguity raised by the not guilty verdict for the robbery charged in *McDonald*." We see nothing in *McDonald* which suggests that its holding was based on this perceived ambiguity. Indeed, as with this case, the issue in *McDonald* was limited to the efficacy of the special circumstance, which in *McDonald* and unlike here was the subject of an explicit jury finding. Accordingly, respondent's attempt to distinguish *McDonald* on this basis must fail.

Finally, respondent points to several cases in which a crime was not deemed to be of a lesser degree despite the absence of an explicit reference to degree in the verdict form. As stated in one of those cases, ". . . the virtually unanimous view in the current case law is that a finding or verdict which unmistakably describes the higher degree is the equivalent of a specific finding of degree. [Citation.]" (*People* v. *Preciado* (1991) 233 Cal.App.3d 1244, 1248 [285 Cal.Rptr. 22].)[4] However, the *Preciado* court acknowledged that this "view" was permissible only because "application of the rule of *McDonald-Beamon* has been confined to those situations in which the prosecution was forced to argue from inferences based on collateral findings in circumstances where no fixing of the degree or the equivalent was made at all." (*Id.* at p. 1248, fn. omitted.)

Here, although the murder verdicts refer to the information, the information is silent as to degree. Conversely, although the special circumstance

---

[2]Indeed, the information alleged that appellants had violated Penal Code section 187, subdivision (a), by committing a murder "with malice aforethought"—a concept which is inapplicable to felony murder.

[3]The Supreme Court did, however, note that the jury was not specifically instructed on attempted robbery, and that "[a]s a result of this omission, the jury may not have realized that if it acquitted defendant of robbery it could consider his guilt of the lesser included offense of attempted robbery." (37 Cal.3d at p. 378, fn. 25.)

[4]In *Preciado*, a conviction of first degree burglary was upheld despite the lack of reference to degree in the verdict form because the form referred to the information, which expressly charged the defendant with " 'RESIDENTIAL BURGLARY—*1st Degree.*' " (233 Cal.App.3d at p. 1247, original italics.)

allegation in the information charges that the murder was committed during a robbery, the verdict form does not refer to this allegation. More important, even if the special circumstance finding did refer to the information, we would still be left with nothing but collateral findings upon which to speculate as to the degree of murder that the jury would have found had it been given the opportunity to do so. Thus, the *Preciado* "view" is inapplicable to this case.[5]

■■ ■■ "[A] defendant whose conviction has been deemed of a lesser degree crime by operation of section 1157 may invoke the protections of double jeopardy to the same extent as one whose similar conviction has followed an express finding of the lesser degree by the trier of fact." (*People v. Superior Court (Marks)* (1991) 1 Cal.4th 56, 71 [2 Cal.Rptr.2d 389, 820 P.2d 613], fns. omitted.) As such, appellants have been "acquitted" of first degree by operation of Penal Code section 1157. We are therefore compelled to modify their murder convictions so that they are deemed to be of the second degree and to strike the special circumstance findings against them. (*People v. Superior Court (Marks)*, *supra*, 1 Cal.4th at p. 71.) On remand, the trial court may reconsider the other sentences imposed upon appellants in light of the reduction of degree of their murder convictions. (*People v. Williams*, *supra*, 157 Cal.App.3d at p. 155; cf. *People v. Jordan* (1986) 42 Cal.3d 308, 319, fn. 7 [228 Cal.Rptr. 197, 721 P.2d 79].)

Before leaving this issue, we pause for a moment to reflect on what we view as troublesome aspects of the law we have just applied. First, we question whether the *Preciado* court drew a distinction without a difference when it contrasted the "virtually unanimous view" that allowed the first degree burglary conviction to be upheld in that case with what it characterized as the more "confined" *McDonald-Beamon* rule. The Supreme Court's *McDonald-Beamon* rule focuses on the actual verdict. The *Preciado* analysis of the relationship between the actual verdict and the document with which the defendant was charged would thus appear to represent a step beyond what was contemplated by the Supreme Court in *McDonald-Beamon*.

[5]Yet another basis exists for possibly distinguishing *McDonald*, but it too ultimately fails. Although the only murder theory presented in *McDonald* was first degree felony murder, the jury was instructed with CALJIC No. 8.74, modified as follows: " 'Before you may return a verdict in this case, you must agree unanimously not only as to whether the defendant is guilty or not guilty, but also, if you should find him guilty of an unlawful killing, you must agree unanimously as to whether he is guilty of *murder of the first degree*.' " (*People v. McDonald*, *supra*, 37 Cal.3d at p. 379, original italics.) CALJIC No. 8.74 was not given in this case (frankly, we cannot understand why it was given in *McDonald*). Nonetheless, the *McDonald* court did not see the instruction as providing a basis for either excusing the lack of finding of degree in the verdict form or for inferring a potential act of leniency on the jury's part. Rather, it found the instruction irrelevant in light of the "unambiguous" and "plain language" of the requirement of Penal Code section 1157 that the degree of the crime be specified in the *verdict*. (37 Cal.3d at pp. 382-383.)

More pertinent to the result here, we are somewhat surprised that the rule of harmless error has not been part of the analysis in the *McDonald-Beamon* line of cases. In the case before us, appellants contend that the trial court erred under Penal Code section 1157 by failing to deem their murder convictions to be of the second degree, with the consequence that judgments of first degree murder were erroneously entered against them. Under California Constitution, article VI, section 13, our authority to set aside these judgments may be exercised only if, "after an examination of the entire cause, including the evidence, [we] shall be of the opinion that the error complained of has resulted in a miscarriage of justice." However, in our application of the *McDonald-Beamon* precedent, we find no authority to assess whether such a miscarriage of justice has occurred in this case.

We further note that the Penal Code section 1157 cases do not address the possibility that the defendant's failure to object to a deficient verdict form might operate as a waiver of an argument that the lesser degree must be deemed to have been found. As the Supreme Court recently stated in discussing the remedy to be applied when a jury is prematurely discharged before commencement of a bifurcated trial on charges of prior felony convictions, "We do not believe that the Legislature . . . intended to create a procedural trap that would enable defense counsel to ambush the trial judge. . . ." (*People* v. *Saunders* (1993) 5 Cal.4th 580, 590-591 [20 Cal.Rptr.2d 638, 853 P.2d 1093].)

In any event, our assessment of which disposition constitutes the true miscarriage of justice or whether the concept of waiver may be applied is irrelevant. These issues were not presented by the parties, and, of paramount importance, the case before us is virtually indistinguishable from *McDonald*. Accordingly, we are bound under *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937], to reduce appellants' convictions to murder of the second degree and to strike the findings of special circumstances made against them.

## 2. *The Sentence*

While appellants were in the process of robbing the 7-Eleven store, one employee was killed and another was wounded.[6] The police were notified of the 7-Eleven robbery while it was in progress and arrived when the perpetrators were still inside the store. Officer Suarez was positioned near the store when, after shots had been fired inside, he observed one of the

---

[6]As a result of their conduct inside the store, appellants were convicted of the murder of one employee, the attempted murder of and assault with a firearm on another employee, and two counts of robbery.

perpetrators, Anthony Carver, running toward him. Carver, who was carrying a pistol, made eye contact with Suarez and began to point the pistol toward him. In fear for his life, Suarez shot Carver. Suarez then moved next to the wall of the store. While standing there, about 10 shots were fired in his direction by the perpetrators. The firing of these shots provided the factual basis of appellants' convictions of assault with a firearm upon a peace officer.

In sentencing on the murders, the court imposed five-year enhancements for appellants' firearm use. As to each appellant, the assault with a firearm of Officer Suarez was selected as the principal offense carrying a determinate term, and the court imposed an upper-term sentence of eight years with a five-year enhancement for firearm use. One-third of the middle term was imposed consecutively for the attempted murder of the 7-Eleven employee. Sentence on the convictions of the assault of the 7-Eleven employee, as well as sentence on the robbery convictions and their associated firearm use enhancements, was stayed pursuant to Penal Code section 654.[7]

Appellants contend that the trial court erred in failing to stay imposition of sentence on the enhancements associated with the assault with a firearm convictions. We disagree.

Because the instant offenses were committed in 1991, this case is governed by the rule established in *In re Culbreth* (1976) 17 Cal.3d 330, 335 [130 Cal.Rptr. 719, 551 P.2d 23], that only one firearm use enhancement may be imposed for crimes which "occurred in a matter of seconds, all part of a single melee," and which constitute "one occasion, one intent, one objective, one indivisible transaction."[8] The rule, once stated, proved to be far more difficult in its application than its formulation. The difficulties were discussed in *People v. Raby* (1986) 179 Cal.App.3d 577 [224 Cal.Rptr. 576], a case which the Supreme Court observed was one of several that had "not been kind to the *Culbreth* rule." (*People v. King, supra,* 5 Cal.4th at p. 72.)

*Raby* involved the distinguishable situation of multiple weapon use enhancements for different victims who were robbed simultaneously in a clothing store. In reviewing the seemingly arbitrary manner in which the *Culbreth* rule had been applied over the years, the *Raby* court noted that, ". . . for the purpose of distinguishing completed robberies and attempts, a

---

[7]No verdict was returned with respect to firearm use during the attempted murder of the employee.

[8]*Culbreth* was later overruled in *People v. King* (1993) 5 Cal.4th 59 [19 Cal.Rptr.2d 233, 851 P.2d 27], but the decision in *King* is not retroactive. (*Id.* at p. 80.)

robbery is complete when the perpetrator has obtained property, however briefly, from the victim. On the other hand, to determine the applicability of the felony murder rule, a robbery is not legally completed until the bandit has reached a place of temporary safety with unchallenged possession of the loot. Are these crimes to be viewed within the narrow scope of the law of attempts or the broader one of the felony murder rule, or some third theory? The first would allow consecutive sentencing for firearm enhancements in virtually all cases, the second in almost none. There must be a third test. Our difficulty is simply that it has yet to be articulated." (*People* v. *Raby*, *supra*, 179 Cal.App.3d at p. 583.)

That the scope of the *Culbreth* rule was never fully articulated, thus leading to arbitrary results, is a major reason that *Culbreth* was overruled. (*People* v. *King*, *supra*, 5 Cal.4th at p. 77.) Nonetheless, before that overruling took place, no appellate decision attempted to apply the rule in the precise situation presented here. Indeed, the only authority beyond *Culbreth* on which appellants rely in support of their argument is *People* v. *Cooper* (1991) 53 Cal.3d 1158, 1166-1169 [282 Cal.Rptr. 450, 811 P.2d 742], an opinion which, for purposes of this case, does nothing more than reaffirm the well-established rule to which the *Raby* court referred that for felony murder purposes, a robbery is not complete until the perpetrator has reached a place of safety.

Given the paucity of guidance in this area, we, like the trial court, view appellants' firearm use inside the 7-Eleven store as something separate and apart from their participation in the gun battle with police officers outside the store. Surely, appellants did not commit an armed robbery of the 7-Eleven store with the intent that, once they got outside, they would exchange gunfire with the police while making their getaway. Although the robbery and escape appear to be part of a continuous sequence of events, the arrival of officers while the robbery was in progress can be compared to the situation in *People* v. *Green* (1985) 166 Cal.App.3d 514, 518 [212 Cal.Rptr. 451], in which consecutive gun use enhancements were permitted when, after having entered a residence with the intent to commit larceny, the defendants raped a resident whom they unexpectedly encountered inside. Accordingly, we find no error in the imposition of firearm use enhancements for both murder and the assault with a firearm upon Officer Suarez.

## DISPOSITION

The judgments are modified to reflect that appellants were convicted of second degree murder, and the findings of special circumstances are

stricken. As modified, the judgments are affirmed, and the matter is remanded for resentencing.

Spencer, P. J., and Ortega, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 16, 1996.