[Crim. No. 37418. Second Dist., Div. One. May 18, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS POLK et al., Defendants and Appellants.

COUNSEL

Paul Arthur Turner and Brian Phillip Wolk, under appointments by the Court of Appeal, for Defendants and Appellants.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Gary R. Hahn, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**DALSIMER, J.**—Appellants, Carlos Polk and Michael David Shipp, were each charged with one count of murder, eight counts of robbery, and one count of kidnaping for the purpose of robbery. As to all counts, it was also alleged that in the commission of the offenses defendant Polk used a firearm and that a principal in each offense was armed with a firearm. It was also alleged that the murder was committed by defendant Polk while he engaged in the commission of a robbery.

Both defendants pled not guilty and denied the special allegations. Both defendants moved to suppress evidence pursuant to Penal Code section 1538.5. After hearing, those motions were denied in part and granted in part.

A jury found defendant Polk guilty of all counts and further found the firearm allegations in all counts to be true as well as the special circumstance allegation concerning the murder count.

Defendant Shipp at the commencement of his trial withdrew his not guilty plea to count I, the murder charge, and pled guilty to murder in the first degree. Disposition of the remaining counts and the special circumstance allegation was left pending.

Defendant Polk was sentenced on the murder charge to the state prison for life without possibility of parole. On counts II through VIII and X, the robbery counts, defendant Polk was sentenced to state prison for the middle term of three years on each count plus two years on each count for the firearm use findings, or a total of five years on each count. These sentences were ordered to run concurrently with each oth-

er and with count I. On count IX, the kidnaping count, defendant Polk was sentenced to state prison for life, said sentence to run concurrently with count I. The court opined that the firearm use enhancements of counts I and IX would merge into the life sentences, and did not strike those enhancements.

Defendant Shipp was sentenced to state prison for 25 years to life. On motion of the People, the remaining counts were dismissed, as was the use allegation in count I.

Both defendants were granted appropriate good-time and work-time credit.

FACTS

Between midnight and 1 a.m. on August 2, 1979, three men entered the King Arthur Steak House in Long Beach. One of the men fired a gun into the air and announced that a holdup was taking place. At least seven persons in the bar were robbed of personal property. One of the patrons, Carl Duggins, Jr., resisted and was shot. He subsequently died as a result of the gunshot wounds.

After completing the robbery, the men required a patron, Mrs. Kicker, to leave with them and took her car keys from her. After she showed them where her car was, one of the men pushed her into the back seat. Two of the men got into the front of the car, and one got into the back with Mrs. Kicker. After having driven a short distance from the steak house, the men took two rings and some money from Mrs. Kicker and fled.

On August 3, 1979, about 4:20 a.m., Officers Stowe and Schroeder were hailed by Mary Ostler, who reported to them that a male Negro had just snatched her purse and run off with it. She described the contents of the purse as being $8 in paper money, some change, and 12 $1 food stamps held together with a paper clip. Mrs. Ostler described her assailant and said he was wearing a blue jogging suit. Officer Stowe transmitted the information concerning this robbery to all police units in the area. One of the officers who received that information was David Dusenbury.

Noting that the location of the possible suspect was near the Winchell's Donut Shop at Atlantic and Anaheim, Officer Dusenbury,

within five minutes thereafter, observed a 1965 Chevrolet go into the parking lot at that location. He saw four men, two of whom were later identified as defendants Polk and Shipp, get out of the car and go into the donut shop. Defendant Polk was wearing clothing similar to that described by the victim of the strongarm robbery. Officer Dusenbury relayed this information to the other officers and requested that they bring Mrs. Ostler to the location. After everyone was assembled, Officers Stowe and Dusenbury went into the donut shop and brought defendants Polk and Shipp and one of the other men outside. Mrs. Ostler, who had remained in the police car, identified defendant Polk as her assailant. The officers suspected that the three men they were interviewing might have been involved in the King Arthur Steak House robbery. At that time all three suspects were arrested for the robbery of Mrs. Ostler, as well as for the robbery and attempted murder at the King Arthur Steak House.

In checking the 1965 Chevrolet in which the men had arrived at the donut shop, Officer Stowe was able to observe from outside the car in an open ashtray on the dash a group of $1 food stamps clipped together with a paper clip. Officers Stowe and Schoenborn then conducted a search of the car and discovered a black leather case that looked like a purse. Officer Schoenborn believed that she could feel an object like a gun within the purse, whereupon she opened it, and a .22 caliber gun was found.

### DISCUSSION

The issues which bring this case within the criteria for publication (Cal. Rules of Court, rule 976) are whether a defendant may be sentenced to a term of life without possibility of parole upon a conviction for murder if that crime was committed when the defendant was under age 18 and whether a life sentence or a sentence imposed for a specified number of years to life may be enhanced pursuant to Penal Code section 12022.5 for use of a firearm. Before we reach these issues, there are several other contentions that must be addressed.

I

*The Suppression Motion*

Defendants Polk and Shipp both contend that the motion to suppress evidence pursuant to Penal Code section 1538.5 should have been

granted. Defendants Polk and Shipp allege that there is no substantial evidence that Officer Schoenborn had probable cause to justify the search of the 1965 Chevrolet at the donut shop. They do not allege that Officer Stowe lacked probable cause to search, but argue that since Officer Schoenborn did not testify as to her state of mind concerning the seizure of the gun, the evidence obtained from the automobile, and particularly the gun, should have been suppressed.

■ The record indicates that defendants failed to raise this objection at the time of the suppression hearing. Counsel for defendant Polk told the court, "I would then essentially just submit the search of the 1965 Chevrolet without argument and submit it." Counsel for defendant Shipp said, "So, again, as concerns him [defendant Shipp], I would adopt Mr. Slick's argument regarding the searches of 1968 and 1965 Chevrolets." (Mr. Slick was defendant Polk's trial counsel.) Defendants are thus barred from raising this issue on appeal because the specific objection was not raised at the trial. (*People* v. *Rogers* (1978) 21 Cal.3d 542, 547-548 [146 Cal.Rptr. 732, 579 P.2d 1048].)

## II

### *The Pretrial Instruction*

■ Defendant Polk argues that the trial court erroneously instructed the jurors concerning their responsibilities in reaching a verdict. This erroneous instruction, he contends, violated the interdiction of the Supreme Court as set forth in *People* v. *Gainer* (1977) 19 Cal.3d 835 [139 Cal.Rptr. 861, 566 P.2d 997, 97 A.L.R.3d 73] and *People* v. *Barraza* (1979) 23 Cal.3d 675 [153 Cal.Rptr. 459, 591 P.2d 947].

The instruction which defendant contends was erroneous was given to the jurors almost immediately after they were sworn to try the cause, at which time the court generally instructed them concerning what would be happening during the trial and what their responsibilities would be. The trial court stated that the purpose of a trial is to obtain a result and that separate verdicts would be required as to each count. The court informed the jurors that, if they returned verdicts with which the court might personally agree, they should not expect to be praised and that, if they returned verdicts with which the court might personally disagree, they should not expect to be criticized. The court also stated, "I will receive them, if they appear to be unanimous, I will presume that twelve good and true persons have based their verdicts upon the evidence and the law."

The *Gainer* court condemned what has been traditionally called the "*Allen* charge" (*People* v. *Gainer, supra,* 19 Cal.3d 835, 842-843), explaining that the portion of the "*Allen* charge" which states that the case must at some time be decided and that a retrial would necessarily result if the jury is unable to reach a verdict is incorrect, because it simply is not true that the case must at some time be decided. (*Id.,* at p. 852.)

Defendant Polk's contention that the explanation given to the jury of its duties resembles the "*Allen* charge" is baseless. The "*Allen* charge" invariably was given after some period, usually a long period, of deliberation by the jury after the case had been submitted to it. Here the instruction was given prior to the time that any evidence was taken. The "*Allen* charge" was given traditionally after a jury had reached an impasse and informed the court that it would be unable to achieve a verdict. The vice of the "*Allen* charge" lies in its possible coercion of minority jurors. In the case at hand, there were no minority jurors, as there had been no vote taken because the case had not been submitted to the jury.

We hold that the instruction complained of was not error, but we also point out that even if it was error, such error was not prejudicial. At the conclusion of the case, the jurors were quite properly instructed regarding their duties. They were told that they were not to take a cue from anything the trial judge had said or done and were instructed on how to approach their task and that the individual opinion of each juror was required. Importantly, the court also told them, "[Y]ou should not be influenced to decide any question in a particular way because a majority of the jurors, or any of them, favor such a decision."

## III

### Diminished Capacity Instructions

 Defendant Polk contends that although the jury was properly instructed regarding diminished capacity as it relates to the specific intent required to commit the crime of robbery, error was committed because the judge failed to instruct *sua sponte* that diminished capacity can negate the knowledge required of a defendant concerning the unlawful purpose of the perpetrators of a crime when the theory of culpability is aiding and abetting. The law requires that the court in a criminal case give *sua sponte* instructions concerning the general

principles of law relevant to the issues raised by the evidence. "The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. [Citations.]" (*People* v. *St. Martin* (1970) 1 Cal.3d 524, 531 [83 Cal.Rptr. 166, 463 P.2d 390].) Further specific instructions relating to the crime must be requested by the defendant if he thinks they are appropriate.

The knowledge requirement for aiding and abetting is not the same as a specific intent necessary to commit robbery. The only intent the jury was obligated to find was the intent knowingly to aid in the commission or attempt to commit the crime. (See *People* v. *Standifer* (1974) 38 Cal.App.3d 733, 743-744 [113 Cal.Rptr. 653].) In the case at bar, defendant Polk never claimed any lack of knowledge concerning defendant Shipp's intention to commit a robbery. He testified he knew that defendant Shipp was going to commit the robbery, that he had a gun, that he knew he had no business pulling a robbery even though he had ingested PCP, and that the drug had no effect upon his participation in the robbery. Defendant Polk admits that the jury was properly instructed concerning diminished capacity, the court having instructed pursuant to CALJIC No. 3.35 and No. 8.79.

In *People* v. *Rogers* (1981) 124 Cal.App.3d 1071 [177 Cal.Rptr. 747], the court rejected a complaint by the defendant that the trial court failed to instruct *sua sponte* to expressly tie the diminished capacity concept to murder by lying in wait. The court there held that the instructions given in that case, CALJIC No. 3.35 and CALJIC No. 8.77, adequately covered the concept of diminished capacity. (*Id.*, at pp. 1078-1080.) The same pertains in the present case. CALJIC No. 3.35[1] contains language broad enough to advise the jury that diminished capacity can affect any of the mental states required for the crime of murder as a result of the commission or attempt to commit the crime of robbery, as well as the mental state essential to commit any of the other crimes with which defendant Polk was charged, either as a principal or as an accomplice.

---

[1]CALJIC No. 3.35 reads as follows: "When a defendant is charged with a crime which requires that a certain specific intent or mental state be established in order to constitute the crime or degree of crime, you must take all the evidence into consideration and determine therefrom if, at the time when the crime allegedly was committed, the defendant was suffering from some abnormal mental or physical condition, however caused, which prevented him from forming the specific intent or mental state essential to constitute the crime or degree of crime with which he is charged. [¶] If from all the

■ Defendant Polk also contends that there was no specific instruction to the jury concerning the mental state for specific intent as related to his participation in the kidnaping for purpose of robbery. The record indicates to the contrary. Defendant Polk confessed to the kidnaping during his testimony at the trial. He testified that he grabbed Mrs. Kicker's car keys and asked her where her car was. He also testified that defendant Shipp pushed Mrs. Kicker into the back of the car and climbed in after her, that he, Polk, drove the car knowing that it was being stolen, and that he knew Mrs. Kicker was being kidnaped and robbed. Furthermore, the court instructed the jury concerning the specific intent required for defendant Polk to be guilty of the crime of kidnaping for the purpose of committing robbery and also instructed the jury that, if the evidence showed that the defendant was intoxicated as a result of the use of any substance, the jury should consider his state of intoxication in determining whether or not he had such specific intent.

It was only through an abundance of caution of the trial court that the jury was instructed concerning diminished capacity. ■ Such instructions were not required based on defendant's own testimony which negated his diminished capacity defense. (*People* v. *Carpenter* (1979) 99 Cal.App.3d 527, 534 [160 Cal.Rptr. 386].) Additionally, it is extremely probable, based on the verdict, that the jury rejected any claim that defendant Polk lacked the specific intent or mental state for any of the crimes of which he was convicted. The jury found not only that defendant was guilty of the kidnaping, but also found that defendant Polk *personally* was armed with a firearm as to each of the counts. This court does not believe that the jury relied upon the aider and abettor theory as it made this latter finding as well. (See *People* v. *Frierson* (1979) 25 Cal.3d 142, 157 [158 Cal.Rptr. 281, 599 P.2d 587].)

## IV

### Appropriate Sentence for Murder by a Minor

■ Defendant Polk asserts that he may not be sentenced to life without possibility of parole. As the Attorney General candidly concedes, the sentence must be modified. The Supreme Court in *People* v. *Davis* (1981) 29 Cal.3d 814, 827-832 [176 Cal.Rptr. 521, 633 P.2d 186], held that there is neither statutory language nor history to authorize a sen-

---

evidence you have a reasonable doubt whether defendant was capable of forming such specific intent or mental state, you must give defendant the benefit of that doubt and find that he did not have such specific intent or mental state."

tence of life without possibility of parole for persons under the age of 18 at the time of the commission of a crime. Defendant Polk was 17 years old when he committed the crimes charged.

In a footnote to his brief the Attorney General suggests that the decision in *People v. Davis, supra*, 29 Cal.3d 814, might no longer be controlling by virtue of the fact that *Davis* was decided based on the statute existing prior to the current statute which was adopted as an initiative measure November 1978. We have examined the text of the initiative, the summary prepared by the Attorney General, the legislative analyst's analysis, and the arguments as set forth in California Ballot Pamphlet, General Election, November 7, 1978, and find no indication therein of any intention on the part of the framers thereof to modify the law concerning the punishment of minors. We perceive the aim of the initiative was to strengthen and make more effective the death penalty law. The operative portion of Penal Code section 190[2] was unchanged by the initiative. It states in both the prior and the newly enacted section, "The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5." The only mention of persons under the age of 18 years accused of homicide in part 1, title 8, chapter 1 of the Penal Code either immediately before the enactment by initiative or thereafter occurs in section 190.5.[3] Section 190.5 remained unchanged by the initiative.

In *People v. Davis, supra*, 29 Cal.3d 814, the court summarized its holding by stating, "[I]f the Legislature had intentionally and substantially increased the maximum penalty that could lawfully be inflicted on minors, we would have expected it to express its purpose clearly and set out the appropriate procedures in detail. Instead, we review a statute unclear in its effect on the penalty applicable to minors, silent regarding appropriate procedures by which the new penalty would be imposed on them, and devoid of evidence of any legislative intent to depart from the status quo. Consequently, the ambiguity must be resolved in defendant's favor by finding no authority for charging minors with special circumstances." (*Id.*, at pp. 831-832, fn. omitted.)

The quoted language applies with equal vigor to the statute enacted by virtue of the initiative. We hold that the imposition of the sentence

[2]Hereinafter all statutory references are to the Penal Code.

[3]Section 190.5 provides: "Notwithstanding any other provision of law, the death penalty shall not be imposed upon any person who is under the age of 18 at the time of the commission of the crime. The burden of proof as to the age of such person shall be upon the defendant."

of life without the possibility of parole was in error and such sentence must be modified pursuant to section 190 to a term of 25 years to life.

## V

### *Other Sentencing Issues*

■ Defendant Polk contends, and the People agree, that the sentence imposed for count II, the robbery count involving the victim of the homicide, violates the rule against double punishment in view of the fact that it was the robbery which fixed the murder as first degree. (§ 654; *People* v. *Rogers, supra*, 124 Cal.App.3d 1071, 1081.) Thus, the sentence imposed under count II, including the use enhancement portion, must be stayed.

■ Defendant Polk also states that he should not be sentenced for count X because count X constituted the robbery which was the underlying crime alleged in count IX and for which he was convicted and sentenced, i.e., kidnaping for the purpose of robbery. The Attorney General also concedes this point, and such sentence must be stayed. Obviously, the use enhancement portion of this sentence must be stayed as well.

■ Defendant Polk argues that the sentences on the robberies charged in counts III through VIII must also be stayed because they could have served as the basis for the findings by the jury on the felony-murder rule theory. Although defendant cites *People* v. *Mulqueen* (1970) 9 Cal.App.3d 532 [88 Cal.Rptr. 235] and *People* v. *Lowe* (1975) 45 Cal.App.3d 792 [119 Cal.Rptr. 699] as support for his proposition, his reliance on those cases is unwarranted.

In *People* v. *Mulqueen, supra*, 9 Cal.App.3d 532, there was but one victim of the robbery murder, and in *People* v. *Lowe, supra*, 45 Cal. App.3d 792, there was one murder victim and one victim of attempted murder. Both victims were robbed. Thus, in neither case was there a situation where the robbery of one victim might serve as the basis for a robbery murder of another victim. We have been unable to locate either decisional or statutory authority for defendant's theory that he should escape punishment for his crimes against the other victims because he must suffer a 25-years-to-life imprisonment for the killing of Mr. Duggins while he was being robbed. We decline to provide such authority.

■ In counts I and IX the trial court did not strike the firearm use allegations, but nonetheless did not impose sentence thereon, stating that it would not do so because such enhancements would merge with the life sentences. Defendant Polk argues that a firearm enhancement in count I as well as count IX is improper because of the doctrine of *People* v. *Walker* (1976) 18 Cal.3d 232 [133 Cal.Rptr. 520, 555 P.2d 633]. That case noted that the punishment provided by section 12022.5 was required to be served upon the termination of the sentence for the underlying crime and that section 12022.5 does not define a crime or offense. (*Id.*, at pp. 243-244.) Hence, it held, the term of imprisonment the section provides does not merge or run concurrently with the life term. (*Id.*, at p. 243.) The result, the court noted, would be that a defendant sentenced to life imprisonment would have to serve a consecutive term under the firearm use allegation, which would be theoretically impossible because it would extend beyond death. (*Ibid.*)

At the time of the decision in *People* v. *Walker, supra,* 18 Cal.3d 232, 243, the law provided that a person could not be sentenced to two consecutive life terms. This rule, however, was changed in 1978 by the Legislature, which expressly provided for imposing consecutive life sentences. Section 669[4] provides that a life sentence, whether with or without the possibility of parole, may be imposed to run consecutively to any other term of imprisonment. This section further provides that whenever a person is committed to prison on a life sentence which is ordered to run consecutively to any determinate sentence that is imposed pursuant to section 12022.5, the determinate term of imprisonment shall be served first and no part credited to the person's eligibility for parole. Further, section 12022.5 was amended to delete the requirement that the sentence thereunder "commence upon expiration or other termination . . . ." (See Stats. 1977, ch. 165, § 92, p. 678.) We therefore hold that the rationale for that portion of the decision in *People* v. *Walker* has been terminated by the Legislature and that the case is no longer binding in this limited regard. As sentence under section 12022.5 was not imposed on defendant Polk under counts I and IX and as the allegations were not stricken, his case must be remanded for sentencing.

---

[4]Section 669 in pertinent part provides: ". . . life sentences, whether with or without the possibility of parole, may be imposed to run consecutively with one another or with any other term of imprisonment for a felony conviction. Whenever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment imposed pursuant to Sections 1170, 1170.1, 667.5, 12022, 12022.5, 12022.6, and 12022.7, the determinate term of imprisonment shall be served first and no part thereof shall be credited toward the person's eligibility for parole as calculated pursuant to Section 3046."

Defendant Polk's sentences on counts III through VIII were each enhanced by virtue of firearm usage. The firearm enhancements imposed on those counts and alleged in count I were based on the use of a firearm on a single occasion which constituted an indivisible transaction. Under the doctrine of *In re Culbreth* (1976) 17 Cal.3d 330 [130 Cal.Rptr. 719, 551 P.2d 23], the court may add but one enhancement as to those counts. It was decided in *People v. Edwards* (1981) 117 Cal.App.3d 436, 448 [172 Cal.Rptr. 652], that the enactment of the determinate sentencing law has not vitiated the *Culbreth* holding. It therefore will be necessary to stay the sentences imposed on the basis of firearm use for counts III through VIII. On remand, the trial court may impose only one enhancement for the firearm use involved in count I and counts III through VIII.

## DISPOSITION

As to the appeal of defendant Shipp, the judgment is affirmed. As to the appeal of defendant Polk, the judgment is affirmed and the matter is remanded for sentencing and modification of sentence. The sentence in count I shall be modified to a sentence of 25 years to life. The sentences for robbery in counts II and X shall be stayed. The sentences imposed as enhancements in counts II, III through VIII, and X shall be stayed, and the trial court shall exercise its discretion in determining which count of counts I and III through VIII it wishes to enhance. It shall also exercise its discretion regarding imposition of an enhancement on count IX.

Spencer, P. J., and Lillie, J., concurred.

The petitions of appellant Shipp and respondent for a hearing by the Supreme Court were denied July 28, 1982.