Edward Byron **BALLARD,**
**Petitioner–Appellant,**

v.

Wayne **ESTELLE, Warden,**
**Respondent–Appellee.**

No. 90–55901.

United States Court of Appeals,
Ninth Circuit.

Submitted Jan. 11, 1991.[*]

Decided June 26, 1991.

---

\* The panel finds this case appropriate for submission without oral argument pursuant to Ninth

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Edward Byron Ballard, pro se.

Donald F. Roeschke, Deputy Atty. Gen., Los Angeles, Cal., for respondent-appellee.

Before ALARCON, NORRIS and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

Edward Byron Ballard appeals the district court's dismissal of his habeas corpus petition on the merits. He is incarcerated in California for armed robbery and argues that the definition of "use of a firearm" used to enhance his sentence was broader

than the California sentencing laws require, thereby denying him due process. He also argues that even if the state court's definition of firearm use was the correct one, there was sufficient evidence of use, according to the definition, in only two of the 18 robbery counts. This court has jurisdiction under 28 U.S.C. § 2253. We affirm.

## BACKGROUND

Mr. Ballard was convicted of 18 counts of robbery, 3 counts of attempted robbery, and 1 count of assault with a deadly weapon. All counts stemmed from two bar robberies conducted with several accomplices on two different days. The jury found that Mr. Ballard had used a firearm in each count. Consequently, the judge enhanced his sentence once for each bar robbery under Cal.Penal Code § 12022.5,[1] and classified each count as a violent felony for sentencing purposes under Cal. Penal Code § 667.5(c)(8). The judge imposed consecutive prison sentences for each count under § 1170.1(a) for a total sentence of 26 years, 8 months.[2]

The judgment was affirmed on appeal and habeas corpus petitions raising the instant arguments to the California Court of appeal and Supreme Court were denied.

Mr. Ballard then filed a habeas petition with the U.S. District Court, Central District of California which was dismissed on the merits. Mr. Ballard appeals that dismissal to this court.

## DISCUSSION

■ Denial of a petition for writ of habeas corpus is reviewed de novo. *Norris v. Risley*, 878 F.2d 1178, 1180 (9th Cir.1989).

### I. *Habeas Corpus Procedure*

■ Contrary to appellant's suggestion, the magistrate and district court judge complied with the governing rules in the procedures they employed in this case. First, although an evidentiary hearing in a habeas corpus proceeding to determine facts is mandatory when certain procedural deficiencies occurred in the state court's fact-finding procedures, *Townsend v. Sain*, 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963); *see also Norris*, 878 F.2d at 1180; 28 U.S.C. § 2254(d), appellant alleges no such deficiency here. Indeed, all participants in this action agree on the facts. The dispute involves a purely legal question: what is "personal use" of a firearm for sentence enhancement purposes

---

1. California Penal Code § 12022.5 allows for additional, consecutive punishment of two years for those who personally use a firearm in the commission of a felony (the gun use enhancement). However, the California Supreme Court has established that although gun use under § 12022.5 may be found for each count when multiple criminal counts arise from a single criminal incident, a gun use enhancement can be imposed only once per incident. *In re Culbreth*, 17 Cal.3d 330, 335, 130 Cal.Rptr. 719, 722, 551 P.2d 23 (1976), *superseded by statute for sex offenses, see People v. Ramirez*, 189 Cal.App.3d 603, 628, 236 Cal.Rptr. 404, 421 (1987). All enhancements that violate this rule must be stayed. *See People v. Chavez*, 26 Cal.3d 334, 365, 161 Cal.Rptr. 762, 782, 605 P.2d 401, 420 (1980); *People v. Miller*, 18 Cal.3d 873, 887–88, 135 Cal.Rptr. 654, 664, 558 P.2d 552, 562 (1977) (in bank); *People v. Raby*, 179 Cal.App.3d 577, 585, 224 Cal.Rptr. 576, 580, *review denied*, (1986). In our case, the sentencing judge stayed the use enhancements except those on two counts (counts seven and twenty). Apparently, this was done so that only one use enhancement per robbery incident would be imposed as re-

quired by *Culbreth*, inasmuch as the robberies in Poor Richard's and the Beaver Pond Bar constitute only two distinct criminal incidents.

2. In his brief at 1–2, appellant argues that the fact that the gun use findings classified each count as a violent felony "permitted" the judge to impose consecutive sentences. The decision to impose consecutive or concurrent sentences for multiple count convictions is not controlled by the classification of the felonies as violent or not. When the judge chooses consecutive sentencing, § 1170.1(a) sets the rules for consecutive sentencing for both violent and non-violent felonies. The appellant also misquotes § 1170.1(a) in n. 3 of his brief. Contrary to his quotation, one-third of the middle term of imprisonment provided by statute is imposed for both violent and non-violent felonies under § 1170.1(a). The sentencing difference between violent and non-violent felonies is that sentencing for non-violent felonies includes a five-year cap for subordinate terms and excludes any enhancements. Sentencing for violent felonies has no cap and includes one-third of any enhancements.

under Cal.Penal Code § 12022.5?[3] Therefore, the decision of the magistrate and district court judge to forego an evidentiary hearing makes sense and was within their discretion.

Second, the relevant portions of the state court trial transcripts were lodged with the district court, *see Ballard v. Estelle,* No. CV 89–6264–RB, Notice of Lodging Documents (C.D.Cal. Feb. 5, 1990). As seen in his reports, the magistrate conducted the necessary review of the transcripts as required. *See Lincoln v. Sunn,* 807 F.2d 805, 808 (9th Cir.1987). In turn, the district court judge reviewed the findings and recommendations of the magistrate and the appellant's objections in making his determination.[4]

■ Finally, it was not improper for the magistrate to review the appellant's objections prior to the judge's review in order to correct any errors he might have made. If the magistrate had made any new findings or recommendations in his final report, the appellant's argument that he should have been given another opportunity to object might have some merit. As that was not the case here, no impropriety existed.

## II. Applications of State Law are Cognizable in Habeas Proceedings

■ State laws may give rise to liberty interests protected by the Fourteenth Amendment. *Board of Pardons v. Allen,* 482 U.S. 369, 381, 107 S.Ct. 2415, 2422, 96 L.Ed.2d 303 (1987) (statute requiring defendant's release on parole when eligible and when reasonable probability that no harm will result creates a liberty interest); *Hewitt v. Helms,* 459 U.S. 460, 466, 103 S.Ct.

864, 868, 74 L.Ed.2d 675 (1983); *Hicks v. Oklahoma,* 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980) (statute that vests sentencing discretion with the trier of fact creates a liberty interest). Misapplication of these laws that lead to deprivations of those liberty interests by state institutions may be reviewed in federal habeas corpus proceedings. *See Wasko v. Vasquez,* 820 F.2d 1090, 1091 n. 2 (9th Cir.1987) (liberty interest in accurate application of state sentencing laws reviewable in habeas proceedings). Mr. Ballard's claim that his sentence violated California sentencing laws because a different definition of "personal use" of a firearm was used than California has adopted in other cases sets forth a cognizable federal habeas corpus claim based on the due process clause of the Fourteenth Amendment.

## III. Definition of "Use"

■ The appellant misstates California's requirements for finding "personal use" of a firearm for sentence enhancement purposes under Cal.Penal Code § 12022.5.[5] The California Supreme Court discussed the difference between being armed and use of a firearm in *People v. Chambers:*

> By employing the term "uses" instead of "while armed" the Legislature requires something more than merely being armed.... Although the use of a firearm connotes something more than a bare potential for use, there need not be conduct which actually produces harm but only conduct which produces a fear of harm or force by means or display of a firearm in aiding the commission of one of the specified felonies. "Use" means,

3. A mixed question of law and fact, which might also be resolved more properly in an evidentiary hearing, involves the application of an undisputed rule of law to the undisputed facts. *Norris,* 878 F.2d at 1181. Here, the rule of law is in dispute and resolution of the legal question will resolve the application of the rule to the facts. Therefore, no mixed question of law and fact exists.

4. Appellant does not object to the state court record itself. Consequently, the district court judge was not required to repeat the magistrate's review of the record. The portions of the record quoted in the magistrate's reports and in

the appellant's objections sufficed to allow the judge to make a de novo determination of the findings and recommendations objected to. *See* 28 U.S.C. § 636(b)(1); Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.

5. Section 12022.5(a) provides in relevant part: "[A]ny person who personally uses a firearm in the commission or attempted commission of a felony shall, upon conviction of such felony or attempted felony, ... be punished by an additional term of imprisonment in the state prison for three, four, or five years...."

among other things, "to carry out a purpose or action by means of" to "make instrumental to an end or process" and to "apply to advantage." (Webster's New Internat. Dict. (3d ed. 1961).) The obvious legislative intent to deter the use of firearms in the commission of the specified felonies requires that "uses" be broadly construed.

7 Cal.3d 666, 672, 102 Cal.Rptr. 776, 498 P.2d 1024 (1972), *quoted in People v. Hays*, 147 Cal.App.3d 534, 544, 195 Cal.Rptr. 252, 258 (1983). Further the court stated in *People v. Wolcott* that "[t]he menacing display of a firearm to intimidate a victim is sufficient to prove use of the firearm under section 12022.5...." 34 Cal.3d 92, 102, 192 Cal.Rptr. 748, 755, 665 P.2d 520 (1983). The generally approved California jury instruction applicable to § 12022.5 provides that "[t]he term 'used a firearm,' as used in this instruction, means to display a firearm in a menacing manner, intentionally to fire it, or intentionally to strike or hit a human being with it." *See People v. Cory*, 157 Cal.App.3d 1094, 1103, 204 Cal.Rptr. 117, 122 (1984) (quoting CALJIC No. 17.19).

The undisputed facts of this case show that Mr. Ballard used his gun in a menacing manner to accomplish his purposes against at least some of the victims during the bar robberies. In Poor Richard's Bar in the course of enforcing his request that the patrons congregate in the women's bathroom, Mr. Ballard reacted to sudden moves by one patron, Mr. Volger, by raising his gun. In the Beaver Pond Bar, Mr. Ballard waved his gun at one of the patrons, Mr. Fox, who was attempting to leave, to prevent him from doing so. Obviously, Mr. Ballard intended his actions to have a forceful effect in accomplishing his felonious purposes. The evidence clearly fits within the definition of personal use used in the California Supreme Court cases discussed above.

The appellant attaches undue importance to the categorizations of California appeals courts applying the personal use standard. In *Hays*, the Fourth District Court of Appeals reviewed the 18 previous California cases addressing use enhancement and concluded that in all of these cases the defen-

dant either aimed, cocked, fired, or displayed the gun in a menacing manner accompanied by words threatening a more violent use. 147 Cal.App. at 548, 195 Cal. Rptr. at 261. The case does not say that these are the only circumstances in which use can be found. The case merely holds that the fact that Mr. Hays carried a rifle slung across his chest, without more, was insufficient for a use enhancement. *Id.*

Two appeals court cases following *Hays* echoed the categories that emerge from the case histories but, again, not in order to fix those categories in stone. *People v. Jacobs*, 193 Cal.App.3d 375, 381, 238 Cal.Rptr. 278, 280–81, *review denied*, (1987) (defendant's words "I have a gun and don't want to use it" followed by cocking the gun in his pocket constituted "use"); *People v. James*, 208 Cal.App.3d 1155, 1163, 256 Cal. Rptr. 661, 664–65, *review denied* (1989) (lack of evidence that robbery victim knew defendant possessed a knife prohibited use enhancement). Both cases acknowledge a broader definition. In *Jacobs*, the court cites two cases in which use was found that are at least as mild as our case; in one, the defendant simply held a gun and yelled, "This is it. Everyone to the floor," and in the other, the defendant merely displayed the handle of a gun strapped to his waist and said he did not want to use it. *See Jacobs*, 193 Cal.App.3d at 381 n. 2, 238 Cal.Rptr. 278. In *James*, the court cites the broad definition of use in the California model jury instructions. *See James*, 208 Cal.App.3d at 1163 n. 4, 256 Cal.Rptr. 661. Appellant's argument that the definition of use is limited to the pattern of past cases outlined in *Hays* contradicts California Supreme Court instructions, misconstrues the appeals court decisions, and is without merit.

IV. *Gun Use in Each Count*

■ Finally, the appellant argues that even if the personal use finding can be sustained in one or two counts, there was insufficient evidence of personal use in every other count. Mr. Ballard's argument is inconsistent with California law. In a simultaneous robbery of multiple victims

by multiple perpetrators, use of a firearm against at least one victim satisfies the personal use requirement such that a gun use finding attaches to every crime for which the defendant is responsible during the transaction, including crimes for which the defendant is only vicariously liable. *People v. Walker,* 47 Cal.3d 605, 635, 253 Cal.Rptr. 863, 880, 765 P.2d 70 (1988), *cert. denied,* —— U.S. ——, 110 S.Ct. 1500, 108 L.Ed.2d 635 (1990). In *Walker,* the defendant and another man robbed a liquor store occupied by three employees. The defendant used a gun at the beginning of the hold-up, but as he and his partner marched the employees into a back room, he handed the gun to his partner. In the back room, the defendant assaulted the co-owner with wine bottles, who then was unable to observe who shot the other two employees. The defendant contended that a gun-use finding against him as to the murder was inappropriate because there was no evidence that he was the one who actually shot the gun. In rejecting that argument, the California Supreme Court said,

> Even assuming for · sake of argument that defendant's companion fired the shots, we do not find defendant's own gun use so separate from the actual shootings that prejudice could be inferred from the court's failure to more fully instruct [regarding gun use].

*Id.,* 47 Cal.3d at 635, 253 Cal.Rptr. at 880, 765 P.2d at 87; *see also In Re Antonio R.,* 226 Cal.App.3d 476, 275 Cal.Rptr. 442, 443 (1990) (defendant, who fired shot into crowd that elicited return fire that killed his girlfriend, was guilty of gun use in commission of her murder). In *People v. Hankey,* 215 Cal.App.3d 510, 513, 263 Cal. Rptr. 615, 617 (1989), *review denied,* (1990) a California appeals court cited *Walker* to support its holding that a defendant guilty of felony murder can have his sentence enhanced for gun use, although the evidence suggested that a codefendant had been the one to shoot the victim. The court said,

> There being no question that appellant personally used a firearm during the course of the instant robbery, the enhancement was entirely proper [for the murder count] regardless of whether or not he also personally shot the victim.

*Id.*[6]

In an earlier case, also named *People v. Walker,* 18 Cal.3d 232, 133 Cal.Rptr. 520, 555 P.2d 306 (1976), *superseded by statute on different grounds, see People v. Polk,* 131 Cal.App.3d 764, 778, 182 Cal.Rptr. 847, 854 (1982), the California Supreme Court held that gun use under § 12022.5 means personal use, and a finding of gun use against an unarmed defendant cannot be based on gun use by a codefendant. *Id.,* 18 Cal.3d at 242, 133 Cal.Rptr. 520; *see also People v. Piper,* 42 Cal.3d 471, 477–78, 229 Cal.Rptr. 125, 128–29, 722 P.2d 899 (1986) (reaffirming that an unarmed defendant cannot be held vicariously liable for a codefendant's gun use). In *Walker,* one of three men had possessed a gun and had killed the victim, but no direct evidence linked an individual defendant to the gun possession or use. Walker's conviction for first-degree murder was sustained, but the

---

**6.** It is not clear whether Mr. Hankey was indicted for robbery, or for any crime other than felony murder, arising from the incident. The fact that he was convicted of only the felony murder count may have influenced the court to allow a gun use finding to attach to that count, when in a different case involving multiple counts the court would only allow the finding to attach to counts for which the defendant had personally used a gun. Other California appeals courts faced with multiple count convictions have said that gun use findings are not appropriate for the counts in which the defendant is liable only vicariously. *People v. Nguyen,* 204 Cal.App.3d 181, 193–94, 251 Cal.Rptr. 40, 47 (defendant used gun during robbery, but codefendant attempted murder—cannot enhance defendant's attempted murder sentence for use), *review denied,* (1988); *People v. Allen,* 165 Cal. App.3d 616, 626–27, 211 Cal.Rptr. 837, 842–43, *review denied,* (1985) (although both defendants had guns and were convicted of murder, could not enhance either sentence for use because no evidence showed which defendant had shot the victim). However, these cases predated the California Supreme Court's decision in *Walker* in which the court allowed a gun use finding to attach to a vicarious murder count, as well as to other assault and robbery counts during the same criminal incident in which the defendant had personally used a gun. By implication, the California Supreme Court has rejected the reasoning of *Nguyen* and *Allen.*

gun use finding was vacated. The Court expressly disapproved an earlier case in which an unarmed defendant, who took the victims' wallets while his codefendant held them at gunpoint, was found to have used a firearm in the commission of the robbery. 18 Cal.3d at 240, 133 Cal.Rptr. at 524. This line of authority can be distinguished from the present case because of its emphasis on the fact that the defendant in each case was unarmed and did not personally use a firearm at any time during the criminal incidents at issue.

Our case does not involve a murder or attempted murder committed by a codefendant during the course of the robbery in which Mr. Ballard personally used a gun. It does involve multiple robbery counts naming multiple victims in two hold-ups. Mr. Ballard used a gun during the robberies to guard the door, move groups of victims from one place to another, and threaten victims who showed signs of not cooperating. It would be inconsistent with *Walker* and with the nature of robberies involving multiple perpetrators and victims, to say a gun use finding as to Mr. Ballard applies only against those victims who challenged him and thereby elicited his menacing behavior. He personally used his gun in the course of simultaneously robbing multiple victims, and a threat to one victim was a threat to all. His personal gun use during the course of the robberies was inextricably related to the robbery of each victim and cannot be separated from any of the robbery counts, including those in which his codefendants were the principal actors.

## CONCLUSION

We AFFIRM the dismissal of Mr. Ballard's habeas corpus petition. There was no federally cognizable abuse of California law in this case.