[EDITORS' NOTE: THIS CONTAINS HEADNOTES HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1528 
OPINION
Cody Lee King appeals the sentence imposed upon him following his conviction on charges of first degree murder, first degree robbery and first degree burglary. Specifically, King contends the court erred by ordering him to serve separate (albeit concurrent) sentences for the robbery and burglary convictions, in addition to the sentence imposed for the murder. Because all three crimes were part of a single course of indivisible conduct carried out with the intent to fulfill a single objective, he argues the separate sentences violated Penal Code section654's prohibition against double punishment. We agree.
The evidence in this case demonstrates that King and an accomplice entered the victim's hotel room with the intention of robbing him. The victim, who had become acquainted with King's accomplice earlier that day, was strangled in the course of carrying out the robbery. There was no evidence the killing was either intended to or did accomplish any goal other than to facilitate the planned robbery, and no evidence King was predisposed to violence for its own sake, so there was no basis for separate punishments.
The judgment is therefore reversed and the case is remanded to the trial court with directions to stay the sentences for both the robbery and burglary convictions.
 * * *
The circumstances of the crimes at issue in this appeal do not appear to be in dispute.[1] In December of 2002, King was living a transient lifestyle, *Page 1529 
sharing hotel rooms and drugs with a motley collection of friends and acquaintances. On the night of December 8, 2002, King went out with Darin Hallet, after Hallet said he had an idea how to get some money.
At Hallet's suggestion, the two men went to a motel room occupied by the victim, John Ruby, whom Hallet had met earlier that day. Ruby, who was five feet six inches tall, and weighed only 146 pounds, suffered from both mental illness and substance abuse problems. When King and Hallet arrived at his motel room, he appeared to be drunk. King and Hallet spoke to Ruby for a few minutes while Ruby was drinking a beer. One of them put Ruby in a chokehold, which caused him to die of asphyxia. Hallet bound Ruby's feet together with a pillowcase, [2] and then he and King stole Ruby's jacket and fanny pack, which contained about $100 in cash. An autopsy revealed that at the time of his death, Ruby had alcohol, amphetamine and methamphetamine in his system.
King was arrested and charged with first degree murder, robbery and burglary. He acknowledged being present in the motel room when Ruby was robbed and killed, but claimed it was Hallet, not he, who had done the killing. Nonetheless, the prosecutor argued at trial (based upon out-of-court statements made by King to third parties) that King himself had been the killer.
The prosecutor also explained to the jury, however, that it was not required to believe either that King was the killer, or that if he was, he actually meant to kill Ruby, in order to find him guilty on the first degree murder charge. Instead, the prosecutor asked the jury "not to get hung up on" that, because under the felony-murder rule, King was guilty of murder simply because Ruby died during the commission of a robbery: "If there was an intent to commit burglary or robbery — we all know that's going to be present in this case — and somebody dies, that its first degree murder. . . . [¶] Because, it does not matter whether the killing was intentional, unintentional or even accidental."
The jury returned a verdict of guilty on all three crimes. The court subsequently sentenced King to terms of 25 years to life on the murder count; three years, to be served concurrently, on the robbery count; and four years, to be served concurrently, on the burglary count. King did not object to *Page 1530 
the imposition of multiple sentences in the trial court, and the court gave no indication of why it might have concluded multiple sentences were warranted.[3]
King's sole contention on appeal is that the court erred in imposing separate sentences for his convictions on the robbery and burglary counts, in addition to the sentence imposed for the murder conviction.[4]
While King concedes it was proper to convict him of these distinct crimes in the circumstances of this case, he argues Penal Code section 654
prevents the court from meting out distinct punishments.
At first blush, this asserted error might appear to be a mere technicality under the circumstances of this case, since the robbery and burglary sentences King challenges are shorter than, and run concurrently with, the sentence imposed for his murder conviction — a conviction and sentence which he does not separately challenge. Thus, he will serve the same amount of time in prison on these charges whether or not he prevails here.
However, there are real consequences stemming from the separate sentences. Penal Code section 667.5 requires the court to impose sentence enhancements for any future felonies King might commit, based upon the number of "prior separate prison term[s]" he has served for past felonies. As explained in subdivision (g) of section 667.5, "A prior separate prison term for the purposes of this section shall mean a continuous completed period of prison incarceration imposed for the particular offense alone or in combination with concurrent or consecutivesentences for other crimes. . . ." (Italics added.) Consequently, if King technically "serves" the three distinct sentences imposed in this case, they would each mandate a separate sentencing enhancement in the event he is convicted of another felony in the future. It is therefore important to ensure the multiple sentences were properly imposed. *Page 1531 
Penal Code section 654, subdivision (a) provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." As explained by our Supreme Court in People v. Miller (1977) 18 Cal.3d 873 [135 Cal.Rptr. 654, 558 P.2d 552], "Section 654 does not preclude multiple convictions but only multiple punishments for a single act or indivisible course of conduct. (See People v. Beamon (1973) 8 Cal.3d 625
[105 Cal.Rptr. 681, 504 P.2d 905].) `The proscription against double punishment . . . is applicable where there is a course of conduct which violates more than one statute and comprises an indivisible transaction punishable under more than one statute. . . . The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one.' (People v. Bauer (1969)1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637].) In People v.Beamon, supra, 8 Cal.3d 625, we stated that [Penal Code] section 654 is applicable to `limit punishment for multiple convictions arising out of either an act or omission or a course of conduct deemed to be indivisible in time in those instances wherein the accused entertained a principalobjective to which other objectives, if any, were merely incidental.' (Id. at p. 639, italics added.)" (People v. Miller, supra,18 Cal.3d at p. 885, overruled on another ground as noted in People v.Oates (2004) 32 Cal.4th 1048, 1068, fn. 8 [12 Cal.Rptr.3d 325,88 P.3d 56].) As the Attorney General acknowledges in his brief, multiple punishments are appropriate only if a "defendant entertained multiple criminal objectives that were independent and not incidental to each other. . . ."
Traditionally, the issue of whether a defendant harbored single or multiple objectives during a course of criminal conduct is treated as a factual question for the trial court to decide (People v. Coleman (1989)48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32]), and the trial court's conclusion will not be overturned on appeal unless unsupported by substantial evidence. (People v. Sandoval (1994) 30 Cal.App.4th 1288,1299 [36 Cal.Rptr.2d 646].) We note this rule might be imperiled in the wake of Cunningham v. California (2007) 549 U.S. ___ [166 L.Ed.2d 856,127 S.Ct. 856], which held that California's determinate sentencing law violated defendants' right to a jury trial under the Sixth and Fourteenth
Amendments of the United States Constitution, because it "plac[ed] sentence-elevating factfinding within the judge's province." (Id. at *Page 1532 
p. ___ [127 S.Ct. at p. 860].)[5] But we need not venture into that thicket, because in this case, there was actually no evidence — nor even any significant argument — that King's objective was anything other than to commit a burglary or robbery. Indeed, everyone seems to have agreed that when King went to Ruby's motel room, he was after money, and perhaps whatever property he might find useful, but nothing more. Even the prosecutor urged the jury to consider Ruby's killing as merely "a killing during a first degree burglary . . . or a robbery" because "if there was an intent to commit burglary or robbery . . . and somebody dies, then it is first degree murder. . . . [¶] . . . It does not matter whether the killing was intentional, unintentional or even accidental."
Indeed, there was no evidence from which the court might have drawn the inference King harbored any distinct intention to kill Ruby. The two were not previously acquainted, and there was no suggestion that King bore Ruby any ill will; nor was there any evidence that Ruby had said or done anything to upset King during their brief time together in Ruby's motel room. Moreover, there was no evidence King was at all inclined to engage in violence for its own sake. Although King does have a prior record, all of the crimes were exclusively theft or property related — King had no history of inflicting harm on other people.
This case is thus distinguishable from People v. Cleveland, supra,87 Cal.App.4th 263, in which the court noted that a history of ill will between the defendant and victim supported the inference that excessive force used on an elderly man in connection with a robbery — he was beaten with a board until the board broke in half — reflected a separate intent to murder him.
The prosecution argues King could properly be sentenced for both the murder and the robbery counts, [6] because there was evidence from which the trial court could properly draw the conclusion that Ruby's choking amounted to "gratuitous violence against a helpless and unresisting victim," which is a sufficient basis for inferring a distinct criminal intent. In support of that argument, the prosecution cites this court's opinion in People v. Nguyen (1988) 204 Cal.App.3d 181 [251 Cal.Rptr. 40], disapproved on other grounds in Ballard v. Estelle
(9th Cir. 1991) 937 F.2d 453, 458, footnote 6. *Page 1533 
In Nguyen, however, the circumstances were quite different. There, the victim, a store clerk, was taken into a back room by the defendant's accomplice, while defendant robbed the till. Once they were in the back room, the accomplice robbed the victim, forced him to lie facedown on the floor, and then shot him in the back. What the Nguyen opinion made clear is that such conduct may be viewed as a distinct objective from the robbery itself, because it was not only "gratuitous," but went "farbeyond [the conduct] reasonably necessary to accomplish the original offense." (People v. Nguyen, supra, 204 Cal.App.3d at p. 191, italics added.)
This case is distinguishable. In fact, the prosecution cites no evidence suggesting that the victim, Ruby, was "helpless and unresisting." While he may have been intoxicated, that is certainly not the same thing. Moreover, the record demonstrates that at the time of the robbery, Ruby had not only alcohol in his system, but also amphetamine and methamphetamine. Those drugs do not generally promote compliant behavior.
And "chokeholds" are not precise maneuvers. The line between the force necessary to restrain an individual and that which will result in his death is much finer than the line drawn in Nguyen. Experience has taught us that even trained police officers have difficulty with such maneuvers. We can hardly expect precision from untrained robbers.
Rather than citing any evidence Ruby was "helpless and unresisting," or explaining why a chokehold to restrain a victim goes "far beyond" the conduct reasonably necessary to accomplish a robbery, what the prosecution actually contends is simply that it should not have beennecessary to kill him: "Appellant and Hallet did not need to kill Ruby in order to steal the money from him. . . . They could have easily taken the money from Ruby, a `short, scrawny, older guy,' without killing him." But the question is not whether, in retrospect, the additional criminal conduct was actually necessary to facilitate the principal objective, but whether it was intended to fulfill a separate objective.
In this case, there was simply no substantial evidence of any separate objective to kill Ruby. To the contrary, the only direct evidence of what occurred in that motel room — King's own statement to police — reflected that Hallet didn't tie up Ruby's feet until after he had been strangled, and that it was done to ensure "he doesn't run after us." The only inference to be drawn from this evidence is that Hallet and King wished only to immobilize Ruby, so as to facilitate their robbery and ensure their getaway. That is fairly conclusive evidence they had no intent to kill him, but only to steal from him. *Page 1534 
The judgment is reversed, and the case is remanded to the trial court with directions to modify King's sentence to reflect that the sentences for robbery and burglary are stayed.
O'Leary, J., and Moore, J., concurred.
[1] In the trial court, King contended that although he participated in the robbery, he did not personally kill the victim. Instead, he contended it was his accomplice, Darin Hallet, who strangled the victim, and that he, King, had been shocked by it. The prosecutor claimed otherwise, but that dispute is immaterial to our evaluation of the issue presented on appeal.
[2] Only Hallet's DNA was found on the pillowcase.
[3] In fact, the only comment offered by the court in the course of the sentencing would seem to suggest it viewed King as having a more passive role in Ruby's killing. The court characterized the jury's verdict on the murder count as having found King "guilty of first degree murder as an aider and abettor." In fact, the verdict makes no mention of "aider and abettor" status.
[4] Despite King's failure to object to the multiple sentences in the trial court, the issue is not waived for purposes of appeal. "It is well settled . . . that the court acts in `excess of its jurisdiction' and imposes an `unauthorized' sentence when it erroneously stays or fails to stay execution of a sentence under section 654." (People v. Scott (1994) 9 Cal.4th 331, 354, fn. 17 [36 Cal.Rptr.2d 627, 885 P.2d 1040].)
[5] See People v. Cleveland (2001) 87 Cal.App.4th 263 [104 Cal.Rptr.2d 641], in which the appellate court split on the issue of whether a trial court could properly make such a finding in the wake ofApprendi v. New Jersey (2000) 530 U.S. 466 [147 L.Ed.2d 435,120 S.Ct. 2348].
[6] The prosecution concedes the trial court erred when it imposed separate sentences for both robbery and burglary, and consequently acknowledges that one of those two sentences should have been stayed. *Page 1535