Filed 8/25/20  P. v. Mann CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHHAYNAT MANN,<br><br>    Defendant and Appellant. | D075618<br><br><br>(Super. Ct. No. SCD274733) |


APPEAL from a judgment of the Superior Court of San Diego County, David M. Gill, Judge.  Affirmed.


Russell S. Babcock, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve

Oetting and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

Chhaynat Mann punched a man during a fist fight and, about a week later, fired a gun at the man's car while they were both driving. A .45-caliber hollow point bullet lodged in the car. During their investigation of these incidents, police officers discovered that Mann possessed a collection of semiautomatic gun paraphernalia and .45-caliber hollow point ammunition in his home. Mann also instructed his wife to urgently dispose of "that thing," i.e., the gun. A jury convicted Mann of several crimes, including assault with a semiautomatic firearm (count 1), being a felon in possession of a firearm (count 5), and simple assault as to the fist fight. On count 1, the jury found that he personally used a firearm.

Mann contends there is insufficient evidence to support his conviction on count 1. He further argues the trial court erred in excluding evidence of the victim's prior uncharged conduct; failing to grant immunity to a defense witness (Mann's wife); instructing the jury on flight (CALCRIM No. 372); refusing to stay the sentence on count 5 under Penal Code section 654;[1] and imposing fines, fees, and assessments without determining his ability to pay.

---

[1]     Further unspecified statutory references are to the Penal Code.

2

For reasons we explain, we are unpersuaded by Mann's arguments and accordingly affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*The Fist Fight*

Mann and his wife worked for a newspaper delivery business, which involved the daily, early morning loading of newspapers into their vehicle at a Sorrento Valley warehouse and delivery of the papers to customers around San Diego. The victims—a man and his wife (victim 1 and 2, respectively, or together, the victims)—also delivered newspapers and engaged in a similar loading process every morning. The victims drove a red sedan that they borrowed from a friend and were unacquainted with Mann and his wife. At the newspaper distribution warehouse, surveillance cameras recorded any movements or motion from different vantage points.

On November 22, 2017, victim 1 was driving into the warehouse with victim 2 seated in the front passenger seat. Victim 1 drove close by Mann's wife, who was walking into the warehouse. Apparently upset by the proximity, Mann's wife hit his car several times and began screaming and cursing at him. Victim 1 tried to assure her that he had seen her the whole time. Victim 2 exited the vehicle to try and calm Mann's wife down, but a physical altercation ensued between the women. A female friend of Mann's wife also approached and became involved in the tussle.

3

Meanwhile, Mann aggressively exited the warehouse and went straight to victim 1, accusing him of "trying to fuck up [his] lady." Victim 1 raised both his hands in the air and said he was not trying to fight. In response, Mann kicked the driver's side door of the red sedan and punched victim 1 in the face. Victim 1 believed Mann punched him while wearing a "ring knife," which many of the paper carriers used for work. Other people at the warehouse intervened and stopped the fight. The red sedan was dented from Mann's kick, and victim 1 suffered a bloody, deep laceration on his chin. Eventually, Mann apologized to victim 1, shook his hand, and promised to pay for the car's damages.

Within the next day or two, victim 1 tried to discuss payment arrangements with Mann, who reneged on his promise. Victim 1 called police to report the incident.

*The Freeway Shooting*

On November 30, 2017, after the victims loaded their red sedan with newspapers to be delivered, they noticed Mann and his wife in a different sport utility vehicle (SUV) than before. Believing the change of vehicles was unusual, victim 1 took a picture of the SUV's license plate as he and victim 2 drove out of the warehouse. Shortly thereafter, the SUV also left the warehouse, with Mann in the driver's seat and his wife in the right rear seat.

4

On the street, the two cars generally paced each other, and victim 1 took more pictures of Mann's SUV. At the on-ramp to the Interstate 805 south freeway, victim 1 sought to pull ahead and away from the SUV, which was in the right lane. As the victims in the left lane passed the SUV, they saw Mann's driver's side window rolled down and heard two gunshots fired at their car. One .45-caliber hollow point bullet lodged in the red car's passenger side, and there was another scrape to the car's fender consistent with a second bullet strike or graze.

The victims pulled over at a convenience store to assess the damage to the car. Victim 1 was able to dislodge the bullet. He then drove to the home of his friend (the car's owner) and called 911 to report the shooting.

*Police Investigation*

The same day of the shooting, police officers conducted a warranted search of Mann's Chula Vista apartment home. In his bedroom, they found: (1) two boxes of .45-caliber ammunition (each box holding 50 rounds); (2) a sack containing .45-caliber hollow point and jacketed rounds (approximately 12 and 14 rounds of each kind, respectively); (3) a concealment holster for a Glock pistol; (4) an empty gun case; (5) a second, Glock gun case containing several Glock magazines loaded with .45-caliber rounds; (6) an unused paper target from a nearby shooting range; and (7) a Glock neoprene work mat typically used for firearm cleaning and/or maintenance, which contained a

5

schematic of gun parts on it to assist with disassembling or reassembling a Glock semiautomatic firearm.[2]

Mann's cell phone contained images of (1) a semiautomatic handgun, (2) ammunition matching that found in his home, and (3) several tactical-style rifles.

An analysis of Mann's and his wife's cell phone location data showed the following: Every day from November 22 through November 29, 2017, between about 12:00 a.m. and 7:00 a.m., Mann's driving route followed a standard pattern. He began by his residence in Chula Vista, went north on the Interstate 805 freeway to Sorrento Valley (to the warehouse), and then returned straightaway south on the Interstate 805 freeway. Mann did not normally take the Interstate 15 freeway during his morning route.

On the day of the freeway shooting, Mann deviated from his normal route. After leaving the paper distribution warehouse and initially heading toward the Interstate 805 south as usual (and as reported by the victims), Mann veered and took a path due east, went south on the Interstate 15 freeway, and eventually reached the area of a National City gas station. There, surveillance footage showed Mann and his wife getting out of the SUV.

_____

[2]    The jury learned during trial that the only kind of handguns that Glock manufactured were semiautomatic.

Mann was arrested and taken into police custody.  While in jail, he made a phone call to his wife.  Mann instructed her to "get ahold of [two people], and . . . get rid of that thing, . . . sell that thing ASAP, get rid of it ASAP," and she "should get [$500] to $600 for it."  A used .45-caliber semiautomatic Glock sold for approximately $500 to $600.  In the same timeframe as the jailhouse call, Mann and his wife sold the SUV to a third party.

*Trial Proceedings*

The information charged the following counts against Mann: (1) assault with a semiautomatic firearm (§ 245, subd. (b)); (2) shooting at an inhabited vehicle (§ 246); (3) assault with a firearm (§ 245, subd. (a)(2));[3] (4) assault with a deadly weapon other than a firearm (i.e., the ring knife) (§ 245, subd. (a)(1)); (5) felon in possession of a firearm (§ 29800, subd. (a)(1); and (6) felon in possession of ammunition (§ 30305, subd. (a)(1)).  Mann was alleged to have suffered three prior felony convictions.  Regarding counts 1 through 4, the information further alleged that Mann personally used a firearm and/or deadly weapon (§§ 1192.7, subd. (c)(23), 12022.5, subd. (a).)

---

[3]    Count 3 was charged as an alternative to count 1.  The jury was instructed that Mann could not be convicted of both counts 1 and 3 and that it must determine whether Mann personally used a firearm as to each crime.

7

During pretrial motions, the court decided to exclude evidence of alleged prior uncharged misconduct by victim 1. In addition, the court declined to grant Mann's wife immunity from prosecution for any crimes she might incriminate herself in if she were to testify as a defensive witness. These rulings are discussed further, *post*.

At trial in January 2019, the jury heard testimony regarding the events we have described, including from the victims, the person who purchased the SUV from Mann, and police officers involved in the investigation. The jury viewed surveillance videos (including footage of Mann in the SUV's driver seat), pictures taken by victim 1, and heard detailed expert testimony from a criminalist (regarding firearms and ballistics) and an investigator trained and experienced with firearms and cell tower analysis. The parties stipulated that Mann was previously convicted of a felony.

The People's experts testified that the only kind of handguns manufactured by Glock were semiautomatic handguns, and .45-caliber rounds were most commonly used in semiautomatic weapons. The fired bullet found in the victims' car possessed a particular pattern on it that was consistent with being fired from a Glock semiautomatic weapon equipped with an after-market barrel. No specialized tools were needed to equip or modify a Glock's standard barrel with an after-market barrel. Further, the

Glock magazines found in Mann's bedroom were designed for use in semiautomatic weapons and were not used in revolvers.[4]

Mann testified in his own defense. According to Mann, victim 1 lunged at him first during the fist fight, causing Mann to punch victim 1 in self-defense. Mann denied kicking the car door. As to the freeway shooting, he acknowledged that both he and the victims were on the onramp at the same time but denied shooting at the victims' car and stated that he took a different route home (the Interstate 15 freeway) because he thought victim 1 was experiencing "road rage." Mann admitted he possessed ammunition and various gun paraphernalia, which had been in his home for "a while." He claimed not to own or possess any firearms. He said he had only gone shooting in the past with other people's guns and that the "thing" he told his wife to "get rid of" during his jailhouse call was an airbag system.

The jury convicted Mann of counts 1, 2, 5, and 6 as charged, and, with respect to the fist fight, simple assault as a lesser included offense of assault with a deadly weapon. The jury also found the personal-use-of-firearm allegations to be true.

---

[4]    A revolver is not a semiautomatic weapon. It has a revolving cylinder with multiple chambers that cartridges are loaded into. The design of the revolver limits its ammunition capacity compared to a semiautomatic weapon, which draws cartridges from an external magazine that is inserted into the firearm.

In March 2019, the court sentenced Mann to a total of 17 years and four months in prison, as follows:  six years for count 1 plus a 10-year personal gun use enhancement (§ 12022.5, subd. (a)), and eight consecutive months on both counts 5 and 6.  The court stayed its sentence on count 2 under section 654 and imposed a sentence of time served on count 4.  The court further imposed various fines, fees, and assessments.

## DISCUSSION

I.   *Substantial Evidence Supports Conviction for Assault with a Semiautomatic Firearm*

Mann contends that insufficient evidence supports his conviction on count 1.  He does not challenge the sufficiency of evidence to support an assault with a firearm, but rather specifically argues there is not substantial evidence to show that a *semiautomatic* firearm was used.  He points to the fact that no semiautomatic firearm was found in his home and no one directly saw him using one.

On a challenge to the sufficiency of the evidence, we "review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence that is, evidence which is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)  "Substantial evidence includes

circumstantial evidence and any reasonable inferences drawn" therefrom. (*In re Michael D.* (2002) 100 Cal.App.4th 115, 126.) The character of a weapon used by the defendant may be shown by circumstantial evidence. (*People v. Green* (1985) 166 Cal.App.3d 514, 517 [gun use established through victim's testimony that she "felt" a gun placed on her head and two bullets found in defendant's pocket]; *People v. Liner* (1959) 168 Cal.App.2d 411, 414 [dangerous/deadly weapon use established through victim's testimony that he believed he was hit by a blunt object and evidence of injury].)

If sufficient evidence supports a finding, it is irrelevant that the evidence is also reasonably susceptible to a different finding. (*People v. Escobar* (1992) 3 Cal.4th 740, 750.) Put another way, we may not set aside a finding for insufficiency of evidence unless it appears that under no hypothesis is there sufficient evidence to support it. (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

In this case, substantial evidence supports the jury's verdict that Mann committed assault with a semiautomatic firearm. It is uncontested on appeal that Mann fired a .45-caliber gun of some kind at the victims. The firearms expert testified that .45-caliber ammunition was most commonly used in semiautomatic weapons and that Glock only manufactured handguns that were semiautomatic. Mann had numerous Glock gun paraphernalia and .45-caliber ammunition within easy reach around his bedroom, compellingly

11

pointing to his recent possession of a semiautomatic firearm. There is no evidence that Mann ever used a revolver. Moreover, he was conversant in firearms and had an appreciation for their nuances; he could have readily modified the barrel of a Glock. It is not surprising that the firearm used in the shooting was not recovered since Mann directed his wife to "get rid of it ASAP." The jury could reasonably infer that he possessed a semiautomatic firearm equipped with an after-market barrel, used it to shoot at the victims, and disposed of the gun afterward.

Although theoretically possible that Mann possessed an array of Glock gun accessories (including Glock gun carriers and cleaning mat) but no corresponding gun, the jury did not find such a theory plausible. Mann's explanations were unbelievable, and at times, outlandish. He claimed he owned a Glock gun case to merely hold Glock magazines (but not a gun), yet also testified that the magazines belonged to a friend, so in essence, he claimed to own multiple gun cases to hold someone else's ammunition. When asked why he had a "Glock gun cleaning mat" in his home if he had no gun, Mann stammered that the mat was "nice to have." He could not explain why he had a Glock concealment holster. We see no basis to reverse his conviction on count one. (*People v. Johnson* (1992) 5 Cal.App.4th 552, 561 ["We may not set aside the trial court judgment for insufficiency of evidence unless it

12

clearly appears that under no hypothesis whatever is there sufficient evidence to support it."].)

II.  *No Abuse of Discretion in Excluding Evidence of Victim 1's Uncharged Prior Conduct*

Mann contends the trial court erred in excluding evidence of uncharged misconduct by victim 1. We provide further background and analysis below.

A.  *Further Background*

In January 2017, victim 1 was allegedly involved in a domestic incident with his wife. According to her report at the time, they had an argument during which he pushed her and kicked a door. She suffered no injuries. Victim 1 denied the conduct and claimed that victim 2 had thrown pizza at him. Victim 1 was arrested for two misdemeanor offenses—spousal battery (§ 243, subd. (e)(1)) and vandalism (§ 594, subd. (b)(2)(A))—but no charges were filed.

The People moved in limine to exclude evidence of victim 1's uncharged conduct under Evidence Code section 352, and conversely, Mann moved to introduce the evidence under Evidence Code section 1103 and because the conduct involved moral turpitude. Both parties essentially agreed that victim 1 could only be impeached with his underlying conduct and not the criminal offenses since he was not charged. Further, the court remarked that the conduct could theoretically involve moral turpitude. The prosecutor

13

argued that introducing evidence of the domestic incident would involve a time-consuming "he said, she said" mini-trial, and even if victim 2 was believed, victim 1's "push with no injury" in the particular context was of "so little probative value." Mann's counsel argued that the conduct would show that victim 1 had a "character for violence and aggression."

After considering counsel's arguments and conducting a weighing process, the court decided not to admit evidence of victim 1's conduct. The court noted that misdemeanor spousal battery and vandalism might be crimes of moral turpitude and potentially used for impeachment, but on balance, found that victim 1's conduct was of "minimal probative value" and should be excluded under Evidence Code section 352.

B.   *Analysis*

"Evidence Code section 1103 authorizes the defense in a criminal case to offer evidence of the victim's character to prove his conduct [in conformity with the character] at the time of the charged crime. Consequently, in a prosecution for a homicide or an assaultive crime where self-defense is raised, evidence of the violent character of the victim is admissible to show that the victim was the aggressor." (*People v. Shoemaker* (1982) 135 Cal.App.3d 442, 446 (*Shoemaker*) [internal footnotes omitted].) Such evidence may be presented in the form of an opinion, evidence of reputation, or evidence of specific instances of conduct. (Evid. Code, § 1103, subd. (a).)

14

Additionally, evidence of crimes or misconduct involving moral turpitude, i.e., moral depravity, may be admitted for impeachment. "Misconduct involving moral turpitude may suggest a willingness to lie." (*People v. Wheeler* (1992) 4 Cal.4th 284, 295 (*Wheeler*).)

Nonetheless, the trial court has discretion under Evidence Code section 352 to exclude character or impeachment evidence if " 'its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*Shoemaker, supra,* 135 Cal.App.3d at p. 448; *Wheeler*, *supra*, 4 Cal.4th at pp. 296-297 [because "impeachment evidence other than felony convictions entails problems of proof, unfair surprise, and moral turpitude evaluation which felony convictions do not present," weighing process must be conducted with great care].)

"Absent a clear showing of abuse, we are compelled to uphold the trial court's exercise of discretion under [Evidence Code] section 352." (*Shoemaker, supra,* 135 Cal.App.3d at p. 449; see also *People v. Hillhouse* (2002) 27 Cal.4th 469, 495-496.)

We cannot say the trial court abused its discretion in excluding evidence of the domestic incident between victim 1 and his wife. It was either unclear or untrue that the proffered evidence would show victim 1 to

15

be a violent aggressor consistent with Mann's theory of self-defense. For example, victim 2 might have initiated a fight by throwing pizza at her husband, and he, in the process of trying to stop her, might have inflicted a noninjury causing "push." Moreover, the context was seemingly quite different—a private dispute at home versus an unprovoked attack on a male stranger in a place of employment. As to the fist fight, both victims were consistent and aligned in their statements that Mann was the initial aggressor, which is supported by evidence of the deep cut on victim 1's face while Mann was completely uninjured. In short, the probative value of the evidence was minimal on the issue whether victim 1 was a violent aggressor against Mann or generally willing to lie. (Evid. Code, § 352.)

On the other hand, introducing such character evidence would be time-consuming and involve an incident having no apparent connection to the charged offenses. The jury would be required to delve into domestic issues between victims 1 and 2, and, the victims might not recall the minutiae of the dispute, in which case, it would have little or no probative value. The evidence would undoubtedly distract the jury from consideration of the circumstances surrounding the charged crimes. In light of the weak probative value of the proffered evidence and danger that it would be unduly

16

time-consuming and confusing, the trial court did not abuse its discretion in excluding the evidence.[5]

III.     *No Error In Refusing to Grant Immunity to Mann's Wife*

During pretrial proceedings, Mann indicated that he wished to call his wife as a witness. She was counseled about her right against self-incrimination. Mann's wife faced potential criminal liability for some of her actions in the case, and she was concerned about incriminating herself by testifying. No charges had yet been filed against her, and the prosecutor refused to grant her or any witness immunity from prosecution. Likewise, the court declined to grant her immunity.

At trial, when called as a defensive witness, Mann's wife refused to testify by invoking her Fifth Amendment privilege against self-incrimination. Later, the issue of immunity for her was discussed once again, with the court reiterating its decision that it was not inclined to grant immunity assuming it had some inherent authority to do so in extraordinary cases.

On appeal, Mann argues the trial court erred in failing to grant immunity to his wife. The People respond that, although earlier cases entertained the notion that California trial courts might have inherent authority to grant immunity, our Supreme Court has more recently held that

---

[5]     It is unnecessary for us to address whether misdemeanor spousal battery and vandalism constituted crimes of moral turpitude.

trial courts do not have such authority. (*People v. Masters* (2016) 62 Cal.4th 1019, 1051 (*Masters*) ["California courts have no authority to confer use immunity on witnesses"]; see *People v. Hull* (2019) 31 Cal.App.5th 1003, 1023 (*Hull*) [following *Masters*].) Granting immunity is solely within the executive branch's prosecutorial discretion. (*Masters*, at p. 1051; *Hull*, at p. 1023.) In his reply brief, Mann concedes that *Masters* is binding precedent on the trial court. Thus, under *Masters*, the court did not err.

Moreover, even if the court had inherent authority to grant immunity, we would conclude it did not abuse its discretion in declining to grant immunity to Mann's wife. (See, e.g., *People v. Stewart* (2004) 33 Cal.4th 425, 468-469 (*Stewart*) [setting forth test for conferring judicial immunity assuming trial courts have inherent authority]; *United States v. Straub* (9th Cir. 2008) 538 F.3d 1147, 1162 (*Straub*) [grant of immunity required to preserve defendant's due process right to a fair trial].) Under *Stewart*, granting judicial immunity is not appropriate where, as here, there is a strong countervailing governmental interest. (*Stewart*, at p. 469.) As the prosecutor pointed out, if Mann's wife was granted immunity, she could testify that *she* was the shooter since she was in the SUV at the time, casting doubt on the People's case against Mann yet evade prosecution herself. (See *ibid.* [if witness may have been the culprit, then strong governmental interest exists in not granting that witness immunity].) Also, the elements present in

*Straub* are lacking in this case, including the *Straub* prosecution's selective grant of immunity to a favorable witness but not to a defense witness who would directly contradict the immunized witness. (*Straub*, at p. 1162.) Mann has failed to establish trial court error.

IV.  *No Error in Giving Flight Instruction (CALCRIM No. 372)*

Over Mann's objection, the trial court instructed the jury on flight as follows: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt. If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct. However, evidence that the defendant fled cannot prove guilt by itself." (CALCRIM No. 372.) On appeal, Mann argues the jury instruction was unsupported by the evidence because he remained on public streets after the freeway shooting and was not fleeing police.

"In general, a flight instruction 'is proper where the evidence shows that the defendant departed the crime scene under circumstances suggesting that his movement was motivated by a consciousness of guilt.' " (*People v. Bradford* (1997) 14 Cal.4th 1005, 1055.) "Evidence that a defendant left the scene is not alone sufficient; instead, the circumstances of departure must suggest 'a purpose to avoid being observed or arrested.' [Citations.] To obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the

19

defendant fled and permissibly infer a consciousness of guilt from the evidence." (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.)

Here, the jury could infer from Mann's actions that he fled the crime scene to avoid detection and/or arrest and thus, permissibly infer consciousness of guilt. Substantial evidence supports that Mann took an unnecessary and unusual deviation from his normal driving route right after the freeway shooting. He admitted as much. The circuitous route Mann took did not align with his own explanation about "road rage" concerns since he could have simply pulled over or gotten off the Interstate 805 freeway, waited a few minutes, and stayed on the same freeway. It did not make sense for Mann to drive many miles out of the way, considering that he and his wife were in the process of completing their deliveries.

Even were we to conclude that the instruction should not have been given, it was clearly harmless. The instruction did not assume that flight was established but left that factual determination and its significance to the jury. (*People v. Visciotti* (1992) 2 Cal.4th 1, 60; see also *People v. Hernandez Rios* (2007) 151 Cal.App.4th 1154, 1159 [CALCRIM No. 372 does not "impermissibly presume[] the existence of his guilt [or] lower[] the prosecution's burden of proof"].) Mann has failed to establish instructional error.

V.    *No Sentencing Error on Count 5*

Mann contends the trial court erred in failing to stay its consecutive 8-month sentence on count 5 (felon in possession of a firearm) under section 654. He argues that he possessed a firearm only as a means to commit an assault with a semiautomatic weapon (count 1), for which he was also convicted and sentenced. In other words, Mann claims his firearm possession and assault offenses were a single course of conduct and shared the same objective. We disagree.

Under section 654, a defendant may not be punished more than once for a single act or for a course of conduct comprising indivisible acts. Divisibility of a course of conduct depends on the intent and objective of the actor. " '[I]f all the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once.' " (*People v. Jones* (2002) 103 Cal.App.4th 1139, 1142-1143 (*Jones*).) "However, if the defendant harbored 'multiple or simultaneous objectives, independent of and not merely incidental to each other, the defendant may be punished for each violation committed in pursuit of each objective even though the violations share common acts or were parts of an otherwise indivisible course of conduct.' " (*Id.* at p. 1143.)

21

"Whether section 654 applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them." (*Jones*, *supra*, 103 Cal.App.4th at p. 1143.)

In *Jones*, the court distilled the following legal principle: "[S]ection 654 is inapplicable when the evidence shows that the defendant arrived at the scene of his or her primary crime already in possession of the firearm." (*Jones*, *supra*, 103 Cal.App.4th at p. 1145.) The court analyzed multiple cases involving defendants who had been sentenced for both a firearm possession offense and some other, usually assault-type offense. (*Ibid*.; see *People v. Ratcliff* (1990) 223 Cal.App.3d 1401, 1412-1413 (*Ratcliff*) [section 654 did not apply where defendant committed two robberies one hour and a half apart, and half hour later, was still in possession of the handgun]; *People v. Bradford* (1976) 17 Cal.3d 8, 13 [section 654 applied where defendant wrested away an officer's revolver and then immediately used it to shoot at the officer]; *People v. Venegas* (1970) 10 Cal.App.3d 814, 821 [section 654 applied where evidence showed that defendant obtained gun from the victim during a struggle moments before shooting the victim in a bar].) In *Jones,* separate punishments were affirmed where the defendant drove by a woman's home in possession of a firearm and then shot at the woman's home.

(*Jones*, at pp. 1142, 1147.) The court reasoned that "Jones committed two separate acts: arming himself with a firearm, and shooting at an inhabited dwelling." (*Id.* at p. 1147.)

In this case, substantial evidence demonstrates that Mann engaged in two acts with distinct objectives: (1) possessing a semiautomatic firearm and (2) committing an assault with the firearm. As in *Jones*, Mann necessarily possessed a firearm in the SUV for some period of time before committing the freeway shooting. It took him well over an hour to travel from his home to the distribution warehouse and complete the newspaper loading process, during which time he had a firearm in his possession. He then used that firearm to assault the victims. The Glock gun paraphernalia and ammunition (and by inference, the gun itself) came from Mann's home; this is not a case where the "firearm came into the defendant's possession fortuitously 'at the instant of committing another offense. . . .' " (*Jones*, *supra*, 103 Cal.App.4th at p. 1145, quoting *Ratcliff*.) The trial court did not err in imposing punishment on both counts 1 and 5.[6]

---

[6] Mann argues for the first time in his reply brief that the trial court erred in failing to instruct the jury on unanimity, without which the jury purportedly did not reach unanimity on when he possessed a firearm. The argument is forfeited. (*People v. Tully* (2012) 54 Cal.4th 952, 1075 ["arguments made for the first time in a reply brief will not be entertained because of the unfairness to the other party"].) In any event, there was no error. The jury was instructed that the crime charged in count 5 occurred on or about November 30, 2017, and the prosecutor argued one theory of when

23

VI.    *Imposition of Fines, Fees, and Assessments*

On January 8, 2019, *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), was filed.  In that case, the court held that the challenged fines, fees, and assessments could not be imposed under the due process clause without considering the defendant's ability to pay.  (*Id.* at p. 1172.)

On March 21, 2019, Mann's sentencing hearing was held.  Without objection from defense counsel, the trial court imposed certain fines, fees, and assessments recommended by the probation department, including (1) a $10,000 restitution fine (§ 1202.4, subd. (b)), the statutory maximum; (2) a suspended matching parole revocation fine (§ 1202.45); (3) $160 court security assessment (§ 1465.8); (4) $120 immediate critical needs account assessment (Gov. Code, § 70373); and (5) $154 criminal justice administration fee (Gov. Code, § 29550.1) (collectively, fines and fees).

Relying on *Dueñas*, Mann claims that the fines and fees were erroneously imposed because the trial court did not determine his ability to pay.  He requests we vacate the fines and fees or remand the matter for the trial court to determine his ability to pay.  Mann admits his defense counsel failed to object at trial.

---

the possession offense occurred—on or about November 30, 2017, in connection with the freeway shooting.  On this record, the jurors necessarily agreed at least that Mann possessed a firearm in his SUV before the freeway shooting.

24

The People respond that the claim is forfeited, and we agree. Because Mann failed to raise the issue below, and *Dueñas* had already been decided, he has forfeited his appellate challenge. (*People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1155 [*Dueñas* challenge forfeited by failure to object to fines and assessments at sentencing]; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033 [same]; *People v. Nelson* (2011) 51 Cal.4th 198, 227 (*Nelson*) [inability to pay a maximum restitution fine forfeited by failure to object].)

Mann invites this court to nevertheless consider his challenge based on his argument that *Dueñas* announced a new constitutional principle and he is presenting a pure issue of law, causing no prejudice to the People were we to consider it. His arguments are not convincing. Mann had actual or constructive knowledge of any new legal principles announced in *Dueñas*. (*Boehm v. Spreckels* (1920) 183 Cal. 239, 248 ["Everyone is presumed to know the law"].) Unlike other cases he cites, Mann's sentencing hearing occurred *after* the *Dueñas* opinion was issued. In addition, he is not presenting a purely legal claim on appeal; vacating the imposed fines and fees requires some factual basis that he is unable to pay. (*Nelson, supra*, 51 Cal.4th 198, 227 [no evidence of defendant's inability to pay foreclosed his claim on the merits].)

*Dueñas* was based on an indigent defendant under arguably exceptional factual circumstances. (See *People v. Kopp* (2019) 38 Cal.App.5th 47, 94 ["In *Dueñas*, the defendant was an indigent, homeless mother of two, who subsisted on public aid while suffering from cerebral palsy."].) Here, Mann does not claim to be indigent nor is there any indication in the record that he is. He was represented by retained counsel at trial, testified to owning eight vehicles, appeared to be able bodied, and earned a steady income for at least 13 years preceding trial. We decline to consider the forfeited claim.

## DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

HALLER, Acting P. J.

IRION, J.

26